## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

JANE DOE (S.C.), an individual,
Plaintiff,

v.                                                    CIVIL ACTION NO: 23-451

THE SHERATON, LLC, STARWOOD
HOTELS & RESORTS WORLDWIDE,
LLC, STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., MARRIOTT
INTERNATIONAL, INC. AND
LOUISIANA HOTEL CORPORATION
d/b/a SHERATON ALBUQUERQUE
UPTOWN,
Defendants

### ORIGINAL COMPLAINT

COMES NOW Plaintiff Jane Doe (S.C.), by and through the undersigned counsel, and

respectfully submits her complaint for damages and makes the following averments.

### SUMMARY

1.      As sex trafficking has grown to epidemic proportions, it has become widely

recognized that we must look beyond just the pimp and sex buyer in order to stop sex

trafficking. We must look to the other individuals and entities who facilitate and benefit

from sex trafficking.

2.      The facilitation of sex trafficking is unlawful under federal law. The Trafficking

Victims Protection Reauthorization Act ("TRVPA"), 18 U.S.C. § 1581, *et seq*, expands

trafficking liability beyond the sex seller and buyer to also prohibit individuals or entities

from knowingly benefiting or attempting to benefit "financially or by receiving anything

of value from participation in a venture which that person knew or should have known"

was engaged in trafficking.

3.     This case is about the sex trafficking of S.C. that occurred at the Sheraton Albuquerque Uptown located at 2600 Louisiana Blvd NE, Albuquerque, New Mexico 87110 ("subject Sheraton"). The Sheraton Albuquerque Uptown was owned and operated by Louisiana Hotel Corporation as a franchisee of The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.

4.     As discussed herein, each of the defendants in this case knowingly benefitted from participation in a venture that facilitated trafficking, and ultimately S.C.'s trafficking, at the subject Sheraton. Accordingly, S.C. brings suit under the TVPRA.

## JURISDICTION & VENUE

5.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

7.     S.C. was trafficked in this District.

## PARTIES

8.     S.C. is a natural person who is currently a resident and citizen of Arizona.

9.     Defendant Louisiana Hotel Corporation d/b/a Sheraton Albuquerque Uptown is a duly qualified and licensed corporation in the State of New Mexico. It can be served by its registered agent, Damen Kompanowski, 2600 Louisiana Blvd. NE, Albuquerque, New Mexico 87110-3600.

10.     Defendant The Sheraton, LLC, is a Delaware corporation with its principal place of business in New York. It can be served through its registered agent, C T Corporation System, 206 S. Coronado Ave., Espanola, New Mexico 87532-2792.

11.     Defendant Starwood Hotels & Resorts Worldwide, LLC is a Maryland limited liability company with its principal place of business in Maryland.  It can be served with process through its registered agent, The Corporation Trust Incorporated, 2405 York Road, Suite 201, Lutherville Timonium, Maryland 21093-2264.

12.     Defendant Starwood Hotels & Resorts Worldwide, Inc. is a Maryland corporation with its principal place of business in Connecticut.  It can be served with process through its agent, The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, Maryland 21201-7912.

13.     Defendant Marriott International, Inc. is a Delaware corporation with a principal place of business in Maryland.  It can be served with process through its registered agent, C T Corporation System, 206 S. Coronado Ave., Espanola, New Mexico 87532.

14.     Defendants The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.  (collectively, "Sheraton") jointly act as franchisors of the Sheraton Albuquerque Uptown.

## FACTS

**The Hotel Industry's Role in Sex Trafficking**

15.     What Defendants knew or should have known about the sex trafficking that was occurring in their jointly operated hotel, including the trafficking of S.C., is shaped by the widely known and pervasive relationship between the hotel industry and sex trafficking.

16.     Defendants are aware of the important role that hotels play in the proliferation of sex trafficking and of the revenue they derive from sex trafficking, both directly and indirectly, from sex trafficking that occurs at their properties.  Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[1] For years, sex traffickers have "been able to reap these profits with little risk when attempting to operate within hotels."[2] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[3] Hotels have been found to account for over 90% of commercial exploitation of children.[4]

17.     To address the crisis of sex trafficking at hotels, multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[5]

---

[1] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

[2] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

[3] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[4] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

[5] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

18.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[6]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money or ID;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

---

[6] *See Id.*

19.     Recognizing the unique vantage point that that hotel owners and staff often have to identify potential human trafficking ventures and victims on their properties, several major hotel chains, including franchisors, franchisees, and owner/operators, have told the public they have accepted the unique opportunity and responsibility to stop facilitating sex trafficking. In order to meet that responsibility, several (if not most) major hotel chains have adopted robust anti-human trafficking policies to train its employees to identify and properly respond to the "red flags" of sex trafficking. Each and every Defendant named herein had the opportunity and responsibility to adopt, implement, and enforce similar policies at the subject Sheraton. Unfortunately for S.C., such policies were not in place or were not enforced at the Sheraton Albuquerque Uptown.

**The Use of Sheraton Branded Properties for Sex Trafficking is Prevalent**

20.     The use of Sheraton hotels for sex trafficking is well known to Sheraton.  Sheraton has known for years that pimps and traffickers use their hotels to carry out their crimes. News stories dating back for years highlight Defendants' knowledge of such conduct. Sheraton knew, or should have known, of the use of Sheraton branded hotels for sex trafficking ventures. Prior to the sex trafficking of Plaintiff and continuing thereafter, Sheraton was on notice of the frequent use of Sheraton hotels including the subject Sheraton Albuquerque Uptown for commercial sex and other associated illegal activity.

21.     The use of Sheraton hotels for sex trafficking was not isolated to one Sheraton hotel or geographic area and the common use of Sheraton hotels for sex trafficking turned into a nationwide problem that stemmed from decisions at the top.

22.     In 2010, Sheraton was specifically advised of the trafficking problem at its hotels, and received recommendations to address the problem, including specific steps to take to

combat human trafficking and child sex exploitation.  Sheraton essentially ignored these recommendations, and Sheraton's failure to take such appropriate measures directly led to the trafficking of S.C. at the Sheraton Albuquerque Uptown.

23.     Each Defendant knew of the sex trafficking crisis prevalent in the hotel industry generally, as well as specifically at Sheraton branded hotels, including the subject hotel, and while Defendants claim not to tolerate such activity, the evidence shows and will show at trial that sex trafficking continued at the subject Sheraton frequently and long after the trafficking of the Plaintiff.

**S.C. Was Trafficked at the Sheraton Albuquerque Uptown**

24.     One of the lives devalued and otherwise adversely affected by Defendants' inattention to the prevention and eradication of sex trafficking was S.C.

25.     In May of 2013, S.C. was repeatedly trafficked for sex at the Sheraton Albuquerque Uptown located at 2600 Louisiana Blvd NE, Albuquerque, New Mexico 87110.

26.     The hotel rooms in which S.C. was trafficked were frequently paid for with cash.

27.     There was also heavy foot traffic in and out of S.C.'s room involving men who were not hotel guests. These men had to pass the front desk to get to the room and were observed by the hotel staff. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time, which are signs of sex trafficking that hotel staff observed. And although the rooms were reserved for the night, they would leave after a few hours.

28.     S.C.'s trafficker chose the Sheraton Albuquerque Uptown hotel for the purpose trafficking S.C. for sex because the manner in which the hotel was operated by Defendants allowed his illegal activity to proceed without interference.

29.     Because policies purportedly enacted and enforced by Sheraton to identify signs of sex trafficking and stop it from occurring were not properly implemented at the Sheraton Albuquerque Uptown by either Sheraton or Louisiana Hotel Corporation, S.C.'s trafficker was able to continue the trafficking venture at the Sheraton Albuquerque Uptown. Had Sheraton enforced the policies and procedures they enacted to prevent trafficking from occurring within their Sheraton branded hotels after observing an obvious sign of trafficking as described above, S.C.'s trafficking would have been identified and reported, which would have prevented her trafficking at the Sheraton Albuquerque Uptown. Furthermore, had Defendant Louisiana Hotel Corporation properly followed the franchise policies enacted by Sheraton to identify and prevent trafficking from occurring at Sheraton branded hotels as described above, S.C.'s trafficking would have been identified and reported, which would have prevented her trafficking at the Sheraton Albuquerque Uptown.

30.     Despite obvious signs of human trafficking and indicators of commercial sex activity, Defendants failed to recognize, stop, or report the venture occurring on the premise that resulted in S.C.'s trafficking and consequently, actively facilitated the trafficking venture. The Defendants harbored or otherwise facilitated a sex trafficking venture on their hotel properties and accordingly, benefited, financial and otherwise, from the sex trafficking the Plaintiff suffered. Furthermore, the Defendants failed to prevent her continued victimization.

31.     Defendants continue to allow illegal activities to occur at the Sheraton Albuquerque Uptown, according to internet reviews and customer complaints.

32.     Defendants, acting by and through their agents, managers, vice-principals and employees, did not act to reduce or eliminate the human sex trafficking in the Sheraton Albuquerque Uptown, despite the obvious signs of sex trafficking and commercial sex taking place there because said Defendants were actively engaged in facilitation of and benefiting from said activities.

**Defendant, Louisiana Hotel Corporation, as Franchisee, Was Required to Report to the Franchisor, Sheraton.**

33.     The relationship between Louisiana Hotel Corporation, as franchisee, and Sheraton, as franchisor, was governed by a franchise agreement.

34.     At all material times, Sheraton had robust reporting requirements in place for its franchisees, such as Louisiana Hotel Corporation.

35.     Sheraton requires its franchisees, such as Louisiana Hotel Corporation, to report all suspected instances of crime at Sheraton branded properties.

36.     Based on information observed by the staff at the Sheraton Albuquerque Uptown, reports should have been made to Sheraton, about the sex trafficking of S.C.

37.     As a result of the strict reporting requirements, at all material times, Defendants knew or should have known of their facilitation of sex trafficking at the Sheraton Albuquerque Uptown, including the facilitation of the sex trafficking of S.C.

38.     Defendant Sheraton exercised pervasive and systematic control over Defendant Louisiana Hotel Corporation.

39.     Defendant Sheraton exercised an ongoing and systemic right of control over Defendant Louisiana Hotel Corporation regarding the operation of the Sheraton Albuquerque Uptown.

40.     At all relevant times, Defendant Louisiana Hotel Corporation was subject to and required to comply with franchise agreement standards, policies, and rules adopted by Sheraton. These standards and policies are detailed and control the specific manner and means by which Defendant Louisiana Hotel Corporation must operate the Sheraton Albuquerque Uptown.

41.     Sheraton requires its franchisees, such as Louisiana Hotel Corporation, to report all suspected instances of sex trafficking at Sheraton branded properties.

42.     Sheraton requires its franchisees, such as Louisiana Hotel Corporation, to allow Sheraton to inspect its Sheraton branded hotels "at any time without notice" to verify that its franchisees are in compliance with its franchise agreement, and that Sheraton branded hotels are operated lawfully.

43.     Sheraton regularly inspected the Sheraton Albuquerque Uptown.

44.     One of Sheraton's most valuable assets is its brand.

45.     Sheraton required Louisiana Hotel Corporation to adhere to strict requirements, including but not limited to:

a.  standardized training methods for employees at the Sheraton Albuquerque Uptown;

b.  building and maintaining the Sheraton Albuquerque Uptown in a manner specified by Sheraton;

c.  standardized or strict rules of operation for the Sheraton Albuquerque Uptown;

d.  regular inspection of the Sheraton Albuquerque Uptown and its operation by Sheraton;

e.  Sheraton provided an online booking platform for the Sheraton Albuquerque Uptown;

    f.   Sheraton established reporting requirements for the Sheraton Albuquerque Uptown; and

    g.   other actions that deprived Defendant Louisiana Hotel Corporation of independence in the business operations of the Sheraton Albuquerque Uptown.

46.    Sheraton specifically retained control over the day-to-day operation of Defendant Louisiana Hotel Corporation with regard to aspects of operation of the Sheraton Albuquerque Uptown that caused S.C.'s harm, including but not limited to reservation policies and procedures, staff training, security policies and training, education polices, and procedure regarding human trafficking.

47.    Sheraton regularly advised Defendant Louisiana Hotel Corporation on operational changes necessary for it to remain in compliance with Sheraton's strict regulations.

48.    Sheraton had the ability to impose fees or fines on Louisiana Hotel Corporation. Furthermore, at all material times, Sheraton retained an absolute right to cancel its franchise agreement with Defendant Louisiana Hotel Corporation if Sheraton's rules were violated or if Louisiana Hotel Corporation otherwise failed to comply with its contractual obligations.

49.    At all relevant times, Defendant Louisiana Hotel Corporation acted as the agent of Sheraton when operating the Sheraton Albuquerque Uptown.

50.    Sheraton and Defendant Louisiana Hotel Corporation shared control of the terms and conditions of the employment of staff at the Sheraton Albuquerque Uptown, and Sheraton and Louisiana Hotel Corporation are joint employers. Upon information and belief, Sheraton exercised control over the terms and conditions employment of staff at the Sheraton Albuquerque Uptown by advertising employment opportunities, making or

influencing employment decisions, setting employee wages, and adopting standardized rules of operations that govern the day-to-day work of the employees.

**S.C.'s Trafficking Could Have Been Prevented at the Sheraton Albuquerque Uptown**

51.     At all material times, Defendants owned, operated, managed, supervised, controlled, and/or was responsible for the operations of the Sheraton Albuquerque Uptown.

52.     Defendants acted jointly to rent rooms at the Sheraton Albuquerque Uptown, with Sheraton retaining control over reservation systems and policies, training, and protocols as further described in this Complaint.

53.     Defendants were jointly responsible for customer safety and, specifically, prevention of human trafficking at the Sheraton Albuquerque Uptown. Sheraton retained control over, and thus had a duty with respect to, customer safety at the Sheraton Albuquerque Uptown generally and specifically regarding detection of and response to human trafficking at the Sheraton Albuquerque Uptown.

54.     Armed with knowledge of the prevalence of trafficking in the hotel industry, at Sheraton hotels across the country, and the signs present at the Sheraton Albuquerque Uptown, Defendants had an obligation to enact, implement, follow, and enforce policies to identify sex trafficking and not to participate in or benefit from the facilitation thereof. Defendants failed to do so and thus facilitated sex trafficking that operated out of the Sheraton Albuquerque Uptown.

55.     The most effective weapon against sexual exploitation and human trafficking is education and training.[7] As ECPAT concluded:

The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go

---

[7] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[8]

56.     This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[9] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

57.     If the Defendants had adequately trained and implemented guidelines, "red flags," training policies and procedures, and other recommendations adopted in the industry, each and every Defendant would have or should have known of S.C.'s trafficking at the Sheraton Albuquerque Uptown and would have been in a position to prevent the trafficking of S.C.

58.     The "red flags" and signs of a sex trafficking venture described above were observed by Defendant Louisiana Hotel Corporation. Upon information and belief, Louisiana Hotel Corporation should have reported the signs of sex trafficking to Sheraton.

59.     Had Defendants educated and/or trained their actual or apparent agents, servants, franchisees, employees and/or staff regarding human trafficking and their warning signs, their actual or apparent agents, servants, franchisees, employees and/or staff would have more aware of human trafficking taking place at their hotels, including the Sheraton

---

[8] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.
[9] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

Albuquerque Uptown, and could have, at best, prevented it from happening or, at worst, been more willing to report it when it happened.

60.     Defendants' active decision not to prevent and stop sex trafficking and sexual exploitation at their hotels, including the Sheraton Albuquerque Uptown, makes them accountable to victims of sex trafficking, including the Plaintiff S.C.

61.     There was an implicit agreement between Defendants and S.C.'s sex trafficker as evidenced by the circumstances surrounding the trafficker's use of the facilities of the Sheraton Albuquerque Uptown, including but not limited to Defendants' rental of rooms to S.C.'s trafficker despite apparent warning signs that S.C. was being trafficked.

62.     Defendants engaged in acts and omissions that supported, facilitated, harbored, and otherwise furthered the trafficker's sale and victimization of S.C. for commercial sexual exploitation. More specifically, the Defendants rented rooms to S.C.'s trafficker, permitted their illicit enterprise to operate on an ongoing and repetitious basis, and took no action to prevent trafficking at the Sheraton Albuquerque Uptown.  This and related behavior by Defendants provide an ample basis to conclude that they participated in the venture that trafficked S.C.

63.     The motivation behind Defendants' ongoing willful blindness and ongoing failure to act is plain and simple – limitless corporate greed; Defendants ignored all of the signs of and/or solutions to human trafficking out of an unfettered fealty to their profit margins and a corresponding complete disregard for the value of human life.

**Defendants Knowingly Benefitted from S.C.'s Sex Trafficking**

64.     Plaintiff alleges that Defendants knowingly received benefits from participating in the venture that facilitated S.C.'s trafficking at the Sheraton Albuquerque Uptown.

65.     As a result of the strict reporting requirements at all material times, both Defendants knew they were both facilitating and benefitting from sex trafficking at the Sheraton Albuquerque Uptown including the sex trafficking of S.C.

66.     Sheraton, as franchisor, generates substantial income from operations of hotels such as the Sheraton Albuquerque Uptown. In exchange for providing the services described above and more specifically delineated in the controlling franchise agreement, Sheraton received a share of the profits from room rentals collected by Defendant Louisiana Hotel Corporation at the Sheraton Albuquerque Uptown. The primary source of Sheraton's income is the franchising royalty fee, but Sheraton also profits from reservation fees, marketing fees, loyalty program fees, and other miscellaneous ancillary fees, as described in the franchise documents. The fees generated by Sheraton are primarily based on gross room rentals, and Sheraton's profits increase with each room rental.

67.     Defendant Louisiana Hotel Corporation, as franchisee, profited from every stay by every patron at the Sheraton Albuquerque Uptown, both from room rentals and other hotel services.

68.     Upon information and belief, Sheraton knowingly benefitted from its participation in the sex trafficking venture carried on at the Sheraton Albuquerque Uptown in that it received a portion of the proceeds collected by its franchisee.

69.     At all material times, Sheraton and Defendant Louisiana Hotel Corporation received monetary payment for the rental of rooms at the Sheraton Albuquerque Uptown, including the rooms where S.C. was being trafficked.

70.     Despite knowledge of the sex trafficking venture occurring at the Sheraton Albuquerque Uptown, both Defendant Louisiana Hotel Corporation and Sheraton

continued to financially benefit from S.C.'s stay at located at the Sheraton Albuquerque Uptown, all while doing nothing to prevent or stop criminal activity-sex trafficking, including the trafficking of S.C., from occurring on their property.

71.    As a result of the monies paid by S.C.'s trafficker to the secure rooms for her trafficking at the Sheraton Albuquerque Uptown, Sheraton and Defendant Louisiana Hotel Corporation knowingly benefitted from participating in the venture that trafficked, harbored, and maintained S.C.'s trafficking at the Sheraton Albuquerque Uptown.

## CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

72.    S.C. incorporates all other allegations.

73.    At all relevant times, S.C. was and is a victim within the meaning of 18 U.S.C. § 1591 and 1595(a).

74.    Defendants are liable as perpetrators within the meaning of 18 U.S.C. § 1595(a) because in the ways described above:

  a.  Each Defendant knowingly or recklessly participated in harboring, maintenance, and/or other acts in further of sex trafficking, including the sex trafficking of S.C.; and

  b.  Each Defendant knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits. 18 U.S.C. §§ 1590(a), 1591(a)(2), 1593A.

75.    Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, as described above, Defendants knowingly benefitted, by receiving financial and

other compensation, from their participation in a venture they knew or should have known was engaged in sex trafficking, in violation of the TVPRA, 18 U.S.C. § 1591, *et seq*.

76.     Despite knowledge of S.C.'s sex trafficking by the Defendants, S.C.'s trafficker was able to continue renting rooms for the sexual exploitation of S.C. at the Sheraton Albuquerque Uptown.

77.     Each Defendant participated in a venture together and with, among others, S.C.'s trafficker. Defendants had an ongoing business relationship and association in fact with S.C.'s trafficker. Despite the fact that Defendants knew or should have known that S.C. was being sex trafficked in violation of the TVPRA, S.C.'s trafficker was able to rent rooms for the sexual exploitation of S.C. at the Sheraton Albuquerque Uptown. S.C.'s sex trafficker used the Sheraton Albuquerque Uptown because he knew that staff members looked the other way despite obvious signs of trafficking. Each of the venturers shared a common purpose – the rental of hotel rooms and the making of profits. Each Defendant profited while S.C.'s trafficker was able to rent a secure venue to earn profits by trafficking S.C. Each Defendant participated in the venture by continually renting rooms to S.C.'s trafficker, failing to properly implement anti-trafficking rules and policies, and assisting traffickers to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of S.C.'s trafficking.

78.     Each Defendant's failure to train and supervise their agents and employees and their inattention to the plights of their patrons, including S.C. at the Sheraton Albuquerque Uptown, enabled and contributed to the sex trafficking of S.C.

79.     Each Defendant received substantial financial benefits as a result of these acts and/or omissions. Sheraton received benefits in the way of management fees, royalty fees,

reservation fees, marketing fees, and other ancillary fees from the operation of the Sheraton Albuquerque Uptown. Louisiana Hotel Corporation received benefits in the way of room rental fees, in-room purchases, and other ancillary expenses by patrons and visitors of the Sheraton Albuquerque Uptown.

80.    The facts alleged establish that each Defendant knowingly benefitted, financially or by receiving anything of value, from participating in a venture that Defendants knew or should have known has engaged in an act in violation of the TVPRA.

81.    Each Defendant's TVPRA violations were a direct, producing, and proximate cause of the injuries and damages to S.C.

82.    S.C. further alleges that, as a result of the relationship between Sheraton and Louisiana Hotel Corporation, Sheraton is vicariously liable for the acts of Louisiana Hotel Corporation, including at the Sheraton Albuquerque Uptown. Factors that support this allegation are that Sheraton shared profits, standardized employee training, standardized and strict rules of operations, Sheraton controlled pricing and reservations, regularly conducted inspections, operational support and control, and other acts described above. Finally, Sheraton had the right to terminate any franchisee, including Louisiana Hotel Corporation, that failed to comply with the requirements promulgated by Sheraton. Thus, Sheraton retained control, or the right to control, the mode and manner of work contracted for.

83.    S.C. further alleges that Sheraton is vicariously liable for the acts and omissions of the staff at the Sheraton Albuquerque Uptown because Sheraton together with Louisiana Hotel Corporation, acts as the joint employer of these employees because Sheraton and Louisiana Hotel Corporation jointly control the terms and conditions of their employment.

## **DAMAGES**

84.     Sheraton and Louisiana Hotel Corporation's acts and omissions, individually and collectively, caused S.C. to sustain legal damages.

85.     Sheraton and Louisiana Hotel Corporation are joint and severally liable for all past and future damages sustained by S.C.

86.     S.C. is entitled to be compensated for personal injuries and economic damages, including:

    a.  Actual damages;

    b.  Direct damages;

    c.  Incidental and consequential damages;

    d.  Mental anguish and emotional distress damages (until trial and in the future);

    e.  Lost earning capacity in the future;

    f.  Loss of self-esteem and self-worth;

    g.  Necessary medical expenses;

    h.  Physical pain and suffering;

    i.  Physical impairment;

    j.  Emotional impairment;

    k.  Unjust enrichment; and

    l.  Penalties.

87.     S.C. is entitled to exemplary damages.

88.     S.C. is entitled to treble damages.

89.     S.C. is entitled to recover attorneys' fees and costs of court.

90.     S.C. is entitled to pre- and post-judgment interest at the maximum legal rates.

91.     A constructive trust should be imposed on Sheraton and Louisiana Hotel Corporation, and the Court should sequester any benefits or money wrongfully received by Sheraton or Louisiana Hotel Corporation for the benefit of S.C.

## DISCOVERY RULE

92.     To the extent Defendants assert an affirmative defense of limitations, Plaintiff invokes the discovery rule. At the time Plaintiff was harmed, Plaintiff did not know that she was the victim of human trafficking, that her injury arose from being trafficked at Defendants' hotel or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury, and certainly not more than ten years before suit was filed. Moreover, at the time the trafficking occurred, Plaintiff did not know what "human trafficking" was, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the existence of a cause of action until shortly before suit was filed, and certainly not more than ten years before suit was filed.

## JURY TRIAL

93.     S.C. demands a jury trial on all issues.

## RELIEF SOUGHT

Wherefore, S.C. respectfully requests judgment against The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., Marriott International, Inc., and Louisiana Hotel Corporation, jointly and severally, for actual damages in excess of the minimum jurisdictional limits of this Court, pre- and post-judgment interest as

allowed by law, costs of suit, attorney fees, and all other relief, at law or in equity, to which she may be justly entitled.

Dated: May 24, 2023                          Respectfully submitted,

**YOUTZ & VALDEZ, P.C.**

By: */s/ Shane Youtz*
Shane Youtz
Stephen Curtice
James A. Montalbano
900 Gold Ave. SW
Albuquerque, NM  87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com

**PROVOST ★ UMPHREY LAW FIRM**

By: */s/ Edward Fisher*
Edward Fisher
State Bar No.: 24012624
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Telephone: (409) 838-8813
efisher@pulf.com
*To be admitted Pro Hac Vice*

Patrick Barrett
Texas Bar No.: 00787042
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
615-463-4000
pbarrett@pulf.com
*To be admitted Pro Hac Vice*

**ANNIE MCADAMS, PC**
Annie McAdams
1150 Bissonnet
Houston, TX 77005
Phone:  713/785-6262
annie@mcadamspc.com

*Counsel for Plaintiff*