## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW MEXICO

JANE DOE (S.C.), an individual,

     Plaintiff,

v.                                                           Case No.: 1:23-cv-00451-KG-JMR

THE SHERATON, LLC, STARWOOD
HOTELS & RESORTS WORLDWIDE, LLC,
STARWOOD HOTELS & RESORTS
WORLDWIDE, INC., MARRIOTT
INTERNATIONAL, INC. AND LOUISIANA
HOTEL CORPORATION d/b/a SHERATON
ALBUQUERQUE UPTOWN,

     Defendants.
_____

## DEFENDANT LOUISIANA HOTEL CORPORATION'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
## AND INCORPORATED MEMORANDUM OF LAW

     Defendant Louisiana Hotel Corporation ("LHC") moves this Court, pursuant to Federal

Rules of Civil Procedure 12(b)(6) and 8(a), for an order dismissing Plaintiff's First Amended

Complaint ("FAC") [Doc. 23] in its entirety, with prejudice.  Despite amending her complaint in

response to the Motion to Dismiss [Doc. 17] filed by Defendants The Sheraton, LLC, and

Starwood Hotels & Resorts Worldwide, LLC (collectively, "Sheraton") and Marriott

International, Inc. ("Marriott"), the FAC fails to cure the deficiencies in Plaintiff's original

complaint.  Having amended once and still failing to correct the pleading deficiencies, Plaintiff

should not be permitted to amend again.

     Plaintiff opposes this Motion.

## INTRODUCTION

     Plaintiff initiated this lawsuit using a form complaint that attempts to hold the hospitality

industry, as a whole, liable under 18 U.S.C. § 1595, the Trafficking Victims Protection

Reauthorization Act ("TVPRA"), for allegedly benefiting from participation in a "sex trafficking venture."  Sheraton and Marriott moved to dismiss that complaint based on the wealth of authority making it clear that conclusory allegations regarding sex trafficking in the hospitality industry, in general, cannot establish a plausible claim under the TVPRA.  In response to the Motion to Dismiss, Plaintiff amended her complaint, ostensibly to correct the pleading deficiencies underlying the motion.  Rather than addressing those deficiencies, however, the FAC continues to rely on conclusory allegations that Defendants participated in a venture that they knew or should have known engaged in criminal acts of sex trafficking generally in the industry.

Sex trafficking is an insidious crime which LHC condemns.  LHC provides training to its employees, including those working at the Sheraton Hotel in Uptown Albuquerque ("Sheraton Albuquerque"), to increase their awareness of human trafficking, to detect and deter trafficking, and to identify suspected victims of these despicable crimes.  Mere failure to prevent sex trafficking is not a basis for liability under the TVPRA.  Plaintiff must prove participation in a venture which the defendant knew or should have known engaged in sex trafficking of the individual plaintiff.  The FAC, however, does not contain a single well-pleaded allegation indicating that Defendants knew or should have known of Plaintiff's alleged trafficking at the Sheraton Albuquerque, let alone that any Defendant participated in the sex trafficking venture that victimized Plaintiff.  The FAC fails as a matter of law.

Plaintiff's attempt to hold Defendants liable for alleged failures in the industry in general, does not state a plausible claim under Rule 12(b)(6).  The crux of the FAC is that, because sex trafficking occurs in hotels and motels throughout the United States in general, Defendants must have known about Plaintiff's plight in particular when she was allegedly trafficked at the

Sheraton Albuquerque.  But, other than alleging that Sheraton, and now Marriott International, control the Sheraton brand, which was licensed to LHC, the independent owner and operator of the Sheraton Albuquerque, the FAC lacks any specific factual allegations that Defendants knew, should have known, or even plausibly could have known, that Plaintiff was being trafficked at all, let alone at the Sheraton Albuquerque.

**FACTUAL BACKGROUND**

Plaintiff's 140-Paragraph FAC continues to focus on sex trafficking in the hospitality industry in general, and includes very limited nonconclusory factual allegations regarding Plaintiff specifically.  FAC ¶¶ 8, 33–36.  Based on these scant factual allegations, Plaintiff asks the Court to make the giant logical leap to infer that these facts plausibly demonstrate that Defendants knowingly benefitted from participation in a venture that they knew or should have known was engaged in sex trafficking Plaintiff.

The FAC recites immaterial allegations and statistics about sex trafficking in the hospitality industry generally and conclusory allegations about the general commercial relationship between a franchisor and franchisee.  For instance, the FAC discusses at length how "human trafficking" is allegedly "linked" to the hospitality industry (FAC ¶¶ 15–25), and other generalities which are not relevant to the alleged criminal incidents carried out against Plaintiff by her trafficker, or her civil claims against Defendants.

Regarding Sheraton, Plaintiff alleges that it set brand standards for hotels operating under a Sheraton brand through "franchise agreement standards, policies, and rules."  FAC ¶ 100.  She alleges that the Albuquerque Sheraton was one of those franchised hotels.  FAC ¶ 35.  Plaintiff also acknowledges that the relationship between Sheraton and LHC was governed by a franchise agreement.  FAC ¶ 50.  But the FAC does not include any nonconclusory allegations that LHC,

as a franchisee of Sheraton, knowingly benefitted from participation in a venture that it knew or should have known was engaged in sex trafficking Plaintiff, let alone allegations to connect the dots even further to Sheraton as the franchisor, or to Marriott as the company which acquired Sheraton several years after the alleged trafficking.

Instead, even with the benefit of Marriott and Sheraton's initial Motion to Dismiss, the FAC continues to lump together all Defendants with vague group allegations, failing to distinguish between the co-Defendants. The FAC alleges no interactions between Plaintiff and the employees of LHC, or between Plaintiff and the other Defendants. Instead, the FAC asserts the bare legal conclusion that Defendants somehow knew or should have known about the sex trafficking of Plaintiff. FAC ¶¶ 84–94. And without any facts to suggest how Defendants could have known about these crimes, the FAC further concludes that Defendants actively decided "not to prevent and stop sex trafficking and sexual exploitation at their hotels" and "failed to reduce or eliminate the human sex trafficking in the Sheraton Albuquerque Uptown." FAC ¶¶ 75, 82.

The FAC asserts that LHC knew or should have known about the alleged criminal incidents as to Plaintiff. It alleges LHC knew or should have known based on the following vague factors: (1) the Sheraton Albuquerque frequently, but not always, accepted cash as payment for Plaintiff's rooms; (2) Plaintiff sometimes stayed at the hotel for several days with few personal items;[1] (3) Plaintiff wore "provocative clothing" at the hotel; (4) Plaintiff sat in the bar at the hotel where hotel staff allegedly overheard her conversations with men discussing sex; (5) men entered and left the hotel after short stays "at unusual hours"; (6) Plaintiff had a nervous demeanor; (7) Plaintiff hung a do not disturb sign on her room door and, rather than allowing the

---

[1] This "clue" contradicts "clue" number 7 that Plaintiff did not let hotel staff in her room. How could hotel staff know what personal belonging Plaintiff had in her room if she did not allow them to enter?

hotel staff to clean the room, she instead simply requested clean linens; and (8) condom wrappers were left in the room.   FAC ¶¶ 38-44.   Plaintiff provides no details to bolster these serious allegations.

## LEGAL STANDARD

Considering a motion to dismiss under Rule 12(b)(6), courts require a plaintiff to allege facts that "state a claim to relief that is plausible on its face" and, if accepted as true, are sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).   "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.   Although factual allegations are accepted as true, "labels and conclusions" are given no deference. *Twombly*, 550 U.S. at 545.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).   "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).   The Tenth Circuit Court of Appeals has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the

line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citations omitted) (quoting

*Twombly*, 550 U.S. at 570).  *See Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 278 F. Supp.

3d 1245, 1259 (D.N.M. 2017) (Browning, J.).

## ARGUMENT

## I.    PLAINTIFF FAILS TO ALLEGE A PLAUSIBLE TVPRA CLAIM.

By enacting the TVPRA, Congress criminalized sex trafficking by force, fraud or coercion and the sex trafficking of minors.  18 U.S.C. § 1591.  Congress also created a civil remedy against both perpetrators of sex trafficking crimes and those who knowingly participate in sex trafficking ventures:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Plaintiff does not allege that any Defendant was a "perpetrator" of her trafficking. Indeed, the FAC does not even identify the member (or members, if there were more than one trafficker) of the venture that allegedly facilitated the trafficking of Plaintiff.  Rather, the heart of Plaintiff's claim is that Defendants are liable for not stopping the alleged criminal trafficking – that is, Defendants failed to comply with "an obligation to enact, implement, follow, and enforce policies to identify sex trafficking [and therefore allegedly] facilitated sex trafficking that operated out of the Sheraton Albuquerque Uptown."  FAC ¶ 69.  Courts have resoundingly

rejected that theory.  *See A.D. v. Marriott Int'l, Inc.*, No. 2:22-cv-644-JES-NPM, 2023 WL 3004549, at *4 (M.D. Fla. Apr. 19, 2023); *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Ore. 2021); *B.M. v. Wyndham Hotels & Resorts, Inc.*, 20-cv-00656-BLF, 2020 WL 4368214, at *6 (N.D. Cal. July 30, 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *5 (E.D. Va. July 22, 2020); *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020).

In the only appellate decision analyzing civil liability under the TVPRA in the context of the hospitality industry, the Eleventh Circuit Court of Appeals construed the elements of a 1595(a) beneficiary claim as follows:

> [T]o state a … claim under Section 1595(a), a plaintiff must plausibly allege that the defendant (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA *as to the plaintiff*, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA *as to the plaintiff.*

*Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021) (emphases added).

Critically, the Eleventh Circuit emphasized the requirement to plead allegations specific to the plaintiff.  *Id.*  This is consistent with several district court decisions from around the country that have dismissed complaints lacking allegations of plaintiff-specific facts.  *See, e.g.*, *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 938 (D. Ore. 2020) (dismissing TVPRA claim where "although Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these Defendants."); *B.M.*, 2020 WL 4368214, at *6 ("Plaintiff must allege facts showing these Defendants knew or should have known of *her* trafficking") (emphasis added); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 154 (E.D.N.Y. 2020) ("The real issue is … whether a defendant satisfies the knowledge

element as to a *particular* sex trafficking venture.").  When analyzing a similar complaint, the Eastern District of Michigan found that the TVPRA claim must be dismissed because plaintiff "has not plausibly alleged that Defendants knew or should have known of sex trafficking by the ventures in which they allegedly participated."  *H.G. v. Inter-Continental Hotels Corp.*, 489 F. Supp. 3d 697, 705 (E.D. Mich. 2020).

Since *Red Roof* was decided, several other district courts have applied its focus on plaintiff-specific allegations to dismiss TVPRA claims based on allegations similar to those of Plaintiff.  *See, e.g.*, *L.H. v. Marriott Int'l, Inc.*, No. 21-22894-Civ-Scola, 2022 WL 1619637 (S.D. Fla. May 23, 2022) (applying *Red Roof* and dismissing TVPRA claim); *A.B. v. H.K. Grp. of Co., Inc.*, No. 1:21-cv-1344-TCB, 2022 WL 467786, at *4 (N.D. Ga. Feb. 9, 2022) (same); *see also C.K. v. Wyndham Hotels & Resorts, Inc.*, No: 3:19-cv-1412-J-34MCR, 2020 WL 5523849 (M.D. Fla. July 7, 2020); *J.B. v. G6 Hosp.*, No. 19-cv-07848-HSG, 2020 WL 4901196, at *10–11 (N.D. Cal. Aug. 20, 2020); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020).  The FAC does not address any of these substantive deficiencies.

A.     <u>THE FAC DOES NOT ALLEGE DEFENDANTS PARTICIPATED IN A VENTURE IN VIOLATION OF TVPRA.</u>

For purposes of a civil claim under Section 1595(a), "participation" in a venture requires some "common undertaking" among the participants of that alleged venture.  *Red Roof*, 21 F.4th at 725.  In the context of a TVPRA claim, Plaintiff must allege "that the franchisors took part in the common undertaking of sex trafficking with hotel employees, management, owners, and sex traffickers."  *Id.* at 726; *see also B.J. v. G6 Hosp. LLC*, No. 22-cv-03765-MMC, 2023 WL

3569979, at *4 (N.D. Cal. May 19, 2023) (same).  The FAC makes no such allegations, much less any plausible ones.

In *Red Roof*, the Eleventh Circuit's analysis began "with the venture the [plaintiffs] say that the franchisors participated in."  21 F.4th at 726.  Specifically, "[t]hroughout their complaints, the [plaintiffs] alleged that the franchisors participated in 'sex trafficking ventures.'" *Id.*  Importantly, just like in *Red Roof*, every single factual allegation in the FAC that mentions a "venture" among Defendants, refers expressly to a venture engaged in sex trafficking.  *See, e.g.*, FAC ¶ 73 (referring to the red flags and signs of a "sex trafficking venture"); ¶ 88 (alleging that "Sheraton knowingly benefitted from its participation in the sex trafficking venture"); ¶ 91 (alleging that "[d]espite knowledge of the sex trafficking venture occurring at the Sheraton Albuquerque Uptown, [the Defendants] continued to financially benefit").

Just as in *Red Roof*, Plaintiff here "chose to frame the ventures at issue as sex trafficking ventures in [her] … complaint[].  Yet [she has] provided no plausible allegations that the franchisors took part in the common undertaking of sex trafficking."  *Id.* at 727.  This omission is fatal to her claim.

The Eleventh Circuit made clear that licensing hotel brands to franchisees; collecting royalty fees; "own[ing], manag[ing] supervis[ing], operat[ing], overs[eeing], controll[ing] the operation of, and/or [being] inextricably connected to the renting of rooms," is not sufficient to plead this element.  *Id.* at 726–27.  Such "allegations may suggest that the franchisors financially benefitted from renting hotel rooms to the [Plaintiff's] sex traffickers.  But they do nothing to show that the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA."  *Id.*  A plaintiff must "connect the dots between their trafficking and the specific defendant."  *G.G. v. Salesforce.com, Inc.*, 603 F. Supp. 3d 626, 645 (N.D. Ill. 2022)

("[i]n cases involving hotel franchisors, for instance, claims that branded hotels rented rooms to people they knew or should have known were engaged in sex trafficking . . . do not make a plausible claim that [the franchisors] directly participated in a venture that *trafficked [the plaintiff]*") (emphasis in original); *see also A.D. v. Marriott*, 2023 WL 2991042, at *4 (court found factual allegations that "the alleged franchisor and the hotel operator did not fight hard enough to keep these traffickers from using the hotel" were insufficient to "plausibly establish that Marriott participated in a common undertaking of a sex trafficking venture involving risk or profit").

The FAC alleges broadly that Defendants "owned, operated, managed, supervised, controlled and/or was responsible" for the Sheraton Albuquerque (FAC ¶ 58), that Sheraton required certain standards (FAC ¶ 104), that Sheraton collects royalty payments (FAC ¶ 86), and so forth. None of this suggests that Marriott International participated in a common undertaking involving risk or profit that violated the TVPRA. *See A.B. v. H.K. Grp.*, 2022 WL 467786, at *4 (applying *Red Roof* and holding that "Plaintiff has not alleged any interactions between Defendants or their employees and the alleged traffickers sufficient to establish that Defendants 'took part in a common undertaking' with the alleged traffickers."). Likewise, Plaintiff's allegations regarding general knowledge or statistics regarding human trafficking in the hospitality industry as a whole, do not sustain a claim that Defendants participated in a venture that violated the TVPRA. *See J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1064 (D. Colo. 2021) ("General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that [a franchisor] participated in the trafficking of plaintiff.").

Even if Plaintiff alleged that Sheraton or Marriott "financially benefitted from renting hotel rooms" to her trafficker, this does "nothing to show that [Defendants] participated in a common undertaking involving risk or profit that violated the TVPRA." *Red Roof*, 21 F.4th at 726–27.

B.   **PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS PARTICIPATED IN AN UNDERTAKING OR ENTERPRISE WHICH VIOLATED THE TVPRA AS TO HER.**

The FAC fails to plead that the venture in which Defendants allegedly participated violated the TVPRA as to Plaintiff.   The *Red Roof* Court made clear that the "common undertaking or enterprise" element cannot be analyzed in a vacuum, but rather must be the type of "common undertaking or enterprise" which additionally "violated the TVPRA as to the plaintiff." *Id.*   While not every beneficiary claim under Section 1595(a) must specifically allege a violation of Section 1591(a) (*see id.* at 725–26), there must be factual allegations of a venture engaged in violating some section of the TVPRA as to that particular plaintiff.   In other words, the second and third elements of a TVPRA claim must be analyzed in conjunction with one another.   As the *Red Roof* Court explained:

> The third element of the Does' claim is that the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA *as to the plaintiff*.   The TVPRA criminalizes various acts, but *the Does specifically premise their Section 1595(a) beneficiary claims on violations of Section 1591(a)*. Section 1591(a) makes it a crime to "knowingly" harbor or solicit a person for commercial sex while "knowing ... that means of force, threats of force, fraud, coercion ..., or any combination of such means will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a).   Section 1591(a) also prohibits anyone from knowingly "benefit[ting], financially or by receiving anything of value" from "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."   *Id.* at 1591(a)(2) & (e)(4).   *Consequently, the Does must plead sufficient facts to plausibly allege that the venture in which the franchisors participated committed one of these crimes against them.*

*Id.* at 725 (emphases added).

The same analysis applies here. Like the Does in *Red Roof*, Plaintiff premises her Section 1595(a) beneficiary claim on a violation of Section 1591(a). In Paragraph 119 of the FAC, she specifically alleges that she is a victim of sex trafficking within the meaning of 18 U.S.C. § 1591(a). Like the pleading defect in *Red Roof*, the FAC does not allege or even imply any violation of the TVPRA other than Section 1591(a). Thus, just like the Does, Plaintiff "must plead sufficient facts to plausibly allege that the venture in which the franchisors participated committed one of these crimes against them." *Id.* She has not done so. *See supra* Part I.A. *See also L.H. v. Marriott*, 2022 WL 1619637, at \*7 (applying *Red Roof* and holding that "L.H. ... fails to allege that any aspect of a local business venture she may have alleged violated the TVPRA as to L.H."); *see also J.L.*, 521 F. Supp. 3d at 1064.

## C.   PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS HAD CONSTRUCTIVE OR ACTUAL KNOWLEDGE THAT ANY UNDERTAKING OR ENTERPRISE VIOLATED THE TVPRA AS TO HER.

Plaintiff's FAC also merits dismissal because it does not satisfy the fourth element under *Red Roof*. Namely, Plaintiff does not plausibly allege that Defendants "had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Red Roof*, 21 F.4th at 726. As to this element, the *Red Roof* Court explained:

> [T]he defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff. Section 1595(a) requires that the defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." Knowledge requires "[a]n awareness or understanding of a fact or circumstance." *Knowledge*, Black's Law Dictionary (11th ed. 2019). Constructive knowledge, on the other hand, is that knowledge which "one using reasonable care or diligence should have." *Constructive Knowledge*, Black's Law Dictionary (11th ed. 2019). Thus, the franchisors may be liable under the TVPRA if they have either actual or constructive knowledge

that the venture in which they participated and from which they benefited violated
the TVPRA as to the Does.

*Id.* at 725.  In other words, generalized knowledge about sex trafficking is insufficient; the
knowledge must be about Plaintiff in particular.

The FAC alleges that there is a "widely known and pervasive relationship between the
hotel industry and sex trafficking."  FAC ¶ 15.  It cites various news articles, statistics, and
reports about sex trafficking in hotels generally.  FAC ¶¶ 16–19.  Conspicuously, all these
sources are dated *after* the alleged trafficking of Plaintiff, and none relate to Plaintiff or her
alleged trafficker.  As such, they are not even facially plausible.  *Twombly*, 550 U.S. at 564–70.
Indeed, "allegations regarding defendants' general knowledge of sex trafficking problems in the
hotel industry, or even at defendants' franchisee hotels, is insufficient to demonstrate defendants
should have known about [plaintiff's] trafficking."  *J.M. v. Choice Hotels Int'l, Inc.*, 2:22-cv-
672-KJM-JDP, 2022 WL 10626493, at *5 (E.D. Cal. Oct. 18, 2022).

The only specific allegations referring to Plaintiff's alleged trafficking are contained in a
few short paragraphs of the FAC.  Plaintiff alleges that rooms were paid for in cash, that there
was "heavy foot traffic," and that "individuals entered and left at unusual hours."  FAC ¶¶ 35–
45.  The FAC also alleges that because these "men had to pass the front desk to get to the room",
the alleged trafficking was "observed by the hotel staff" (FAC ¶ 43).  Paragraph 45 of the FAC
illustrates Plaintiff's reliance on conclusory allegations, stating only that "[t]here were other
signs of S.C.'s trafficking that were observed by hotel staff, which are consistent with the 'red
flags' for trafficking."  Despite labeling these as "obvious sex trafficking signs" (FAC ¶ 62), the
FAC does not specify that Marriott International, Sheraton (the franchisor at the time of the
alleged trafficking), or any of their employees observed these supposed "red flags."

Even assuming Plaintiff had sufficiently identified the specific staff, the *Red Roof* court roundly rejected this theory as to hotel franchisors, stating succinctly that "observing something is not the same as participating in it." 21 F.4th at 727. In doing so, the court analyzed even more detailed factual allegations by the Does than those alleged here. For example, the Does alleged that "the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking." *Id.* This was not sufficient. *Id.*

Following *Red Roof*, at least one district court has likewise dismissed a claim against the hotels themselves (not just the franchisors) involving the alleged trafficking of a minor. In that case, "Plaintiff allege[d] that Defendants' employees spoke with her and cleaned her room on several occasions. She argues that her condition and the condition of her room should have suggested that she was a victim of sex trafficking. By failing to assist her or alert authorities, Plaintiff contends that Defendants 'participated' or took part in a sex trafficking ventures." *A.B. v. H.K. Grp.*, 2022 WL 467786 at *4. Citing *Red Roof*, the *A.B* court held that this was insufficient to plead a TVPRA claim. *Id.* In stark contrast to the *A.B.* plaintiff, who alleged specific and direct interactions with a specific defendant, no such allegations appear in the FAC. If A.B.'s claims against the local hotels were dismissed under *Red Roof*, it follows that the FAC does not, and cannot in good faith, plausibly allege facts sufficient to satisfy this element.

In *H.G.*, the Michigan District Court stated that, to satisfy the "element that focuses on Defendants' knowledge of alleged sex trafficking," the plaintiff "must plead facts showing that the defendant knew or should have known of sex trafficking *by the particular venture in which the defendant allegedly participated.*" 489 F. Supp. 3d at 704 (emphasis in original). Analyzing the TVPRA, the *H.G.* Court reasoned:

14

> The "knew or should have known" language appears in the "which" clause, and that clause is focused directly on the "venture" in which the defendant "participat[ed]."  Accordingly, the relevant state-of-mind inquiry for purposes of the third element focuses on whether the defendant knew or should have known of sex trafficking by the venture in which he allegedly participated.  It thus follows that a defendant's "knowledge or willful blindness of a general sex trafficking problem … does not satisfy the *mens rea* requirements" of a claim under the financial beneficiary prong.

*Id.* at 704–705 (internal citation omitted).

Applying this principle, the court first observed that "the franchisees' alleged knowledge" could not support a direct liability theory as a matter of law because "that theory depends upon Defendants' *own* states of mind."  *Id.* at 705 (emphasis in original, internal citations omitted).  The court next rejected a series of "conclusory" allegations as insufficient to satisfy the state-of-mind element.  *Id.*  Last, the court reiterated that being "generally aware of sex trafficking in the hotel industry and at some properties operating under their brand names" cannot satisfy this element, because Plaintiff must plead facts establishing that Defendants knew or should have known of the sex trafficking by the particular ventures in which they allegedly participated.  *Id.* at 706.

The FAC here is even more sparse than the pleading rejected in *H.G.*  It is filled with vague and conclusory allegations about the Defendants' "actual and/or constructive knowledge" of sex trafficking generally.  FAC ¶¶ 15–25, 54–59.  Paragraph 69 perhaps best exemplifies the type of allegation on which the FAC relies, averring that "[a]rmed with knowledge of the prevalence of trafficking in the hotel industry . . . Defendants had an obligation to enact, implement, follow, and enforce policies to identify sex trafficking."  This type of allegation does not even state anything about the trafficking of Plaintiff, much less Defendants' knowledge

thereof.  Instead, it is a conclusory allegation about the Defendants' purported knowledge of sex trafficking in general.  These allegations cannot sustain a TVPRA claim as a matter of law.

### D.   PLAINTIFF FAILS TO ALLEGE THAT DEFENDANTS "KNOWINGLY BENEFITTED" FROM THE ALLEGED SEX TRAFFICKING OF HER.

Plaintiff has not alleged facts sufficient to satisfy the first element of a TVPRA claim under *Red Roof*.  Explaining this element, the *Red Roof* Court stated:

> The parties do not meaningfully dispute the first element, and we likewise have little difficulty in deciding what "knowingly benefits" means. "Knowledge" is "[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *Knowledge*, Black's Law Dictionary (11th ed. 2019). And Section 1595(a) explains that a defendant may benefit "financially or by receiving anything of value." Accordingly, a plaintiff like the Does must allege that the defendant knew it was receiving some value from participating in the alleged venture.

*Red Roof*, 21 F.4th at 723–24.

While the parties in *Red Roof* did not dispute the meaning of the "knowingly benefits" element, here, Defendants dispute that Plaintiff has sufficiently pled this element.  As discussed above, because Marriott did not have any involvement or relationship with the Sheraton brand in 2013, so Marriott International could not have received any financial benefit from alleged trafficking at the Sheraton Albuquerque. Moreover, despite having taken the opportunity to amend her pleading, Plaintiff's allegations remain insufficient to establish that Sheraton knew or could have known that any portion of the revenue received from the franchised hotel was derived from criminals who were trafficking Plaintiff.  *See supra* Part I.C.  Since Plaintiff still has not adequately pled participation in a venture in the first place, she certainly has not pled LHC or any Defendant "knew it was receiving some value from participating in the alleged venture." *Red Roof*, 21 F.4th at 723–24; *see also L.H.*, 2022 WL 1619637, at *6 (rejecting plaintiff's argument that she pled the "knowingly benefitted from" element when she, like Plaintiff, alleged an

unsupportable Section 1591(a) venture); *H.G.*, 489 F. Supp. 3d at 705 ("That Defendants knew or should have known about trafficking by other (or unspecified) ventures in which they are not alleged to have participated is not enough under the financial benefit prong of the TVPRA.").

Perhaps anticipating these insurmountable problems, the FAC repeatedly emphasizes the alleged failures to "recognize, stop, or report" the exploitation of Plaintiff. *See* FAC ¶¶ 47, 72, 73, 75, 76, 81, 82, 91 (detailing alleged failures to implement measures that would allegedly stop sex trafficking). The TVPRA does not impose an affirmative duty to police sex trafficking, however, and it is neither fair nor reasonable to expect Defendants to usurp the role of law enforcement in doing so. Such a construction of the TVPRA is untenable, deleting the key words and phrases discussed herein (*e.g.*, "knowingly benefits" and "participation in a venture"). It is not surprising that every court that has considered this theory has roundly rejected it. *See*, *e.g.*, *A.B. v. Wyndham*, 532 F. Supp. 3d at 1027 ("[T]he TVPRA does not impose an affirmative duty to police and prevent sex trafficking."); *A.B. v. Marriott*, 455 F. Supp. 3d at 182 ("We do not read the Act as requiring hotels ... to affirmatively stop the trafficking."); *B.M.*, 2020 WL 4368214, at *7 ("the Court does not read section 1595 of TVPRA requiring hotels or their franchisors to affirmatively stop sex trafficking."). Despite this, Plaintiff continues to advance the theory that because sex trafficking occurs in the hospitality industry, that Defendants necessarily participated in a venture that violated the TVPRA. *See, e.g.*, FAC ¶¶ 47.c., 72, 73, 75, 76, 81, 82, 91. This is not the law. Simply put, merely alleging a failure to stop sex trafficking is not sufficient to plausibly allege participation in a venture that violated the TVPRA.

## II.   THE AMENDED COMPLAINT IS AN IMPROPER SHOTGUN PLEADING.

In addition to the specific pleading deficiencies identified above, the FAC is also an improper shotgun pleading and should be dismissed on that basis as well.  "A 'shotgun pleading' 'begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief.  The general allegations are incorporated by reference into each count of the complaint....'  *Cook v. Baca*, No. 10-cv-1173 JP/KBM, 2011 WL 13157059, at *3 (D.N.M. July 8, 2011) (quoting *Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998)).  "[A] shotgun pleading prevents the parties and the court from understanding what the case is really about because the complaint is so cluttered with irrelevant and unrelated facts." *Id.* "Shotgun pleadings are pernicious because they unfairly burden defendants and courts by shifting onto them the burden of identifying plaintiff's genuine claims and determine which of those claims might have legal support."  *Wilcox v. Gay*, No. 1:20-cv-01018-KWR-LP, 2021 WL 4820630, at *1 (D.N.M. Oct. 15, 2021) (internal quotations omitted).

The FAC groups The Sheraton LLC, Starwood Hotels & Resorts Worldwide LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International all together under the moniker "Sheraton," and further groups "Sheraton" with LHC as "Defendants", but does not distinguish among the respective roles or involvement of each Defendant in the alleged conduct that forms the basis for the FAC.  This deprives Defendants of the requisite notice under Rule 8. "The law recognizes a significant difference between notice pleading and 'shotgun' pleading." *Glenn v. First Nat'l Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989); *see also McNamara v. Brauchler*, 570 F. App'x 741, 743 (10th Cir. 2014) (allowing shotgun pleadings to survive a motion to dismiss "would force the Defendants to carefully comb through" "distracting and irrelevant detail" to determine which allegations require response).

18

## <u>CONCLUSION</u>

For all of the foregoing reasons, LHC respectfully requests that the Court dismiss the FAC

as against in its entirety and with prejudice, and grant such other and further relief as the Court

deems just and proper.

Respectfully submitted,

MILLER STRATVERT P.A.

By: */s/ Charlotte A. Lamont*
Dan Akenhead
Charlotte A. Lamont
Laureana A. Larkin
Andrew Q. Varan
P.O. Box 25684
Albuquerque, NM 87125
Telephone: (505) 842-1950
Facsimile: (505) 243-4408
dakenhead@mstlaw.com
clamont@mstlaw.com
llarkin@mstlaw.com
avaran@mstlaw.com

*Attorneys for Louisiana Hotel Corporation*

I hereby certify that, on this 19th day of
December, 2023, I filed the foregoing using
CM/ECF which caused the following
counsel to be served by electronic means, as
more fully reflected on the Notice of
Electronic Filing:

**YOUTZ & VALDEZ, P.C.**
Shane Youtz
Stephen Curtice
James A. Montalbano
900 Gold Ave. SW
Albuquerque, NM 87102
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com

*Attorneys for Plaintiff*

**PROVOST UMPHREY LAW FIRM**
Edward Fisher
350 Pine Street, Suite 1100
Beaumont, TX 77701
efisher@pulf.com
Patrick Barrett
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
pbarrett@pulf.com

*Attorneys for Plaintiff*

**RODEY, DICKASON, SLOAN,**
**AKIN & ROBB, P.A.**
Andrew G. Schultz
Melanie B. Stambaugh
Noell S. Huffmyer
P.O. Box 1888
Albuquerque, NM 87103
aschultz@rodey.com
mstambaugh@rodey.com
nhuffmyer@rodey.com

*Attorneys for Defendants The Sheraton LLC,*
*Starwood Hotels & Resorts Worldwide,*
*LLC, Starwood Hotels & Resorts*
*Worldwide, Inc., and Marriott International,*
*Inc.*

**DLA PIPER LLP (US)**
Michael P. O'Day
Ellen Dew
650 South Exeter St., Suite 1100
Baltimore, MD 21202
michael.oday@us.dlapiper.com
ellen.dew@us.dlapiper.com

*Attorneys for Defendants The Sheraton LLC,*
*Starwood Hotels & Resorts Worldwide,*
*LLC, Starwood Hotels & Resorts*
*Worldwide, Inc., and Marriott International,*
*Inc.*


By: */s/ Charlotte A. Lamont*
       Charlotte A. Lamont


\\Abq-tamarack\ProData\015379-053529\Drafts\5133913.DOCX