**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| JANE DOE (S.C.), an individual<br>Plaintiff<br><br>v.<br><br><br>THE SHERATON, LLC, STARWOOD HOTELS & RESORTS WORLDWIDE, LLC, STARWOOD HOTELS & RESORTS WORLDWIDE, INC., MARRIOTT INTERNATIONAL, INC. AND LOUISIANA HOTEL CORPORATION d/b/a SHERATON ALBUQUERQUE UPTOWN,<br><br>Defendants. | Cause No. 1:23-cv-00451-KG-JMR |

**PLAINTIFF JANE DOE S.C.'S BRIEF IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT LOUISIANA HOTEL CORPORATION**
**(ORAL ARGUMENT REQUESTED)**

Plaintiff Jane Doe ("S.C.") submits this brief in opposition to the Motion to Dismiss filed by Defendant Louisiana Hotel Corporation ("LHC").

**REQUEST FOR ORAL ARGUMENT**

S.C. respectfully requests that the Motion to Dismiss filed by LHC be set for oral argument and states that oral argument is necessary to fully present her position.

**INTRODUCTION**

The TVPRA creates a civil remedy against businesses that—while not criminally liable for sex trafficking—benefit from facilitating it. *See* 18 U.S.C. § 1595(a). Section 1595(a) reflects Congress's judgment that an effective fight against trafficking requires expanding liability beyond just sex buyers and sellers. *G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023); *In re Hotel TVPRA Litig.*, No. 2:22-cv-1924, 2023 U.S. Dist. LEXIS 72454, at *66-67 (S.D. Ohio 2023). This

1

is sound policy and accords with ordinary principles of responsibility: a person walking by a pond need not search for struggling swimmers, but one who profits by operating a waterpark is held to a different standard. Similarly, businesses that profit by facilitating trafficking are responsible for the harm this trafficking causes.

Traffickers repeatedly chose the Sheraton Uptown as the site for the exploitation of their victims. (ECF No. 23 at ¶ 31). The conduct of LHC and the Sheraton Defendants[1] made the Sheraton Uptown a venue of choice for sex traffickers, including S.C.'s traffickers. (*Id.* at ¶ 26). Even though it knew or should have known this, LHC continued to generate revenue by facilitating trafficking at the Sheraton Uptown, including S.C.'s trafficking. (*Id.* ¶¶ 58-83). S.C. thus sues LHC under the TVPRA.

LHC asks the Court to dismiss S.C.'s claims, arguing that the TVPRA provides no remedy to a victim who is repeatedly exploited at a defendant's hotel, even if that defendant knew or should have known it was profiting from ongoing sex trafficking there. But LHC's arguments "seek to impose restrictions on the civil remedy created by Congress that are not consistent" with § 1595(a)'s text or current case law. *G.G.,* 76 F.4th at 548. The interpretation of § 1595(a) that LHC advocates would undermine Congress's choice to fight trafficking by targeting **profiteers** as well as perpetrators. Under a proper understanding of § 1595(a), S.C. states a claim against LHC as both a beneficiary and a perpetrator.

---

[1] S.C. has also filed suit against The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc. and Marriott International Inc. (collectively "the Sheraton Defendants"). However, S.C.'s claims against the Sheraton Defendants are the subject of a separate motion.

**FACTUAL OVERVIEW**
**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)**.** A claim has facial plausibility when the allegations "would allow the court to draw a reasonable inference that the defendant is liable for the misconduct charged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a claim must be plausible, it need not be probable. *Id.* A claim is plausible if a plaintiff pleads enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. "The concept of 'plausibility' at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, Ltd. Liab. Co. v. Deer Valley Resort Co.,* 555 F.3d 1188, 1191-92 (10th Cir. 2009). To state a claim under Section 1595(a), a plaintiff must allege facts from which a court can "reasonably infer" that the defendant knowingly benefited from participation in a venture it knew or should have known has engaged in a violation of the TVPRA. *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171 (E.D. Pa. 2020). This standard is not demanding, asking that a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G.,* 76 F.4th at 551. Here, S.C. states a claim under § 1595(a) against LHC as both a beneficiary and a perpetrator, and the Court should allow this case to proceed to discovery.

**ARGUMENT**

The TVPRA imposes civil liability against those who know or should know they are profiting by facilitating sex trafficking. Two provisions are relevant here. **First**, § 1591 imposes **criminal penalties** for:

(a) Whoever knowingly—

3

> (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . . or any combination of such means will be used to cause the person to engage in a commercial sex act . . .

18 U.S.C. § 1591 (a). Thus, a business is criminally liable for sex trafficking if (1) it traffics a victim knowing or in reckless disregard of the fact that the victim will be coerced into sexual activity, 18 U.S.C. § 1591(a)(1)); or (2) benefits from knowingly facilitating a sex trafficking violation, 18 U.S.C. § 1591 (a)(2).

**Second**, § 1595 (a) creates a civil cause of action both against perpetrators who violate § 1591 **and** against beneficiaries. The civil beneficiary liability created by § 1595 (a) stems from Congress's choice to expand the TVPRA's scope. *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 180-9 (E.D. Pa. 2020). A key distinction from § 1591 (a)(2) is that a beneficiary is liable under § 1595 (a) if it **should have known** that it was facilitating trafficking. *Id.* at 188. This standard "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant knew or should have known that the venture was involved in sex trafficking." *M.A. v. Choice Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (cleaned up). This describes "an objective standard of negligence." *A.B.*, 455 F. Supp. 3d at 181 (cleaned up). This expanded remedy provides victims "a cause of action against those who have profited from their exploitation" even without participating in it. *Id.* at 181. S. C. states a claim that LHC is liable under the TVPRA, both as a beneficiary and as a perpetrator.

4

**I.    S.C. states a beneficiary claim against LHC.**

S.C. states a claim against LHC directly because LHC benefited by participating in a venture at the Sheraton Uptown which it knew or should have known was facilitating sex trafficking. A claim against a hotel defendant who knew or should have known it was providing a venue for trafficking falls squarely within the scope of § 1595(a). The initial case applying § 1595(a) liability to a hotel defendant came from the First Circuit in *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2009). The *Ricchio* Court reversed the district court's dismissal of TVPRA claims against the owner-operators of a hotel who had rented rooms to traffickers. It reasoned that these defendants created a venture with traffickers operating at the hotel through an implicit agreement to continue renting rooms to them despite obvious signs of unlawful activity. *Id.* Following *Ricchio*, courts have applied beneficiary liability to hotel owners and to franchisors under either direct or vicarious theories of liability.[2] In the most recent circuit-level opinion, the Seventh Circuit endorsed application of § 1595(a) liability to those who profit from commercial relationships that facilitate trafficking. *See G.G.*, 76 F.4th at 561.

---

[2] *See, e.g.*, *M.A*, 425 F. Supp. 3d at 964; *A.B.*, 455 F. Supp. 3d at 186; *J.M. v. Choice Hotels Int'l, Inc.,* No. 2:22-cv-00672-KJM-JDP, 2023 U.S. Dist. LEXIS 84861 at *6-7 (E.D. Cal. 2023); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *1 (N.D. Cal. 2020); *Doe v. Rickey Patel, LLC*, No. 0:20-60683, 2020 U.S. Dist. LEXIS 195811, at *32 (S.D. Fla. 2020); *M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, at *17 (W.D. Wash. 2020); *H.H v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 U.S. Dist. LEXIS 211090 (S.D. Ohio 2019); *S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 U.S. Dist. LEXIS 44961, at *2 (S.D. Ohio 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *2 (E.D. Va. 2020); *K.B. v. Inter-Continental Hotels Corp.,* No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, *13 (D.N.H. 2020); *S.Y. v. Naples Hotel Co.,* 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020); *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1238 (N.D. Ga. 2022); *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1318 (N.D. Ga. 2022); *N.G. v. BW RRI III LLC*, No. 23-CV-80884-ROSENBERG, 2023 U.S. Dist. LEXIS 178891, at *2 (S.D. Fla. Oct. 4, 2023).

LHC relies heavily on *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), where the Eleventh Circuit affirmed dismissal of § 1595(a) claims against franchisors. But *Doe* does not support LHC's arguments. **First**, *Doe* evaluated the only venture theory alleged by plaintiffs: that the franchisors participated directly in "sex trafficking ventures." *Id.* at 726. *Doe* recognized that the plaintiffs could have pled that the franchisor-defendants participated in "commercial ventures" but had not and had declined a chance to amend. *Id.* at 727; *G.G.*, 76 F.4th at 561. By contrast, S. C. alleges **commercial** ventures that violated the TVPRA, making *Doe* inapplicable. *See A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437 at *25 (S.D. Ohio 2022);

**Second**, *Doe* concluded that the plaintiffs had made only conclusory allegations of the franchisors' involvement at the hotels. 21 F.4th at 727. By contrast, S.C. alleges that LHC was the franchisee/owner of the Sheraton Uptown and, together with the Sheraton Defendants, directly operated the hotel. *Doe*'s reasoning aligns with imposition of liability against a hotel defendant "intimately involved" in hotel operations. *A.W.*, 2022 U.S. Dist. LEXIS 227437, at *25; *see also N.G.*, 2023 U.S. Dist. LEXIS 178891, at *2. *Doe's* reasoning thus supports S.C.'s claim against LHC.

S.C. states a beneficiary claim based on LHC's role in a venture that facilitated sex trafficking at the Sheraton Uptown. The elements of this claim are: (1) S.C. is a victim under the TVPRA; (2) LHC knowingly benefited; (3) from participation in a venture; (4) which LHC knew or should have known was engaged in a violation of the TVPRA. *A.B.*, 455 F. Supp. 3d at 180-89. LHC's motion does not address and thus concedes the first element.[3] The Court should deny LHC's motion because S.C. adequately pleads the remaining elements.

---

[3] To the extent that LHC did attempt to challenge this element, any such challenge would be meritless. S.C. is a victim of sex trafficking. (ECF No. 23 at ¶ 3). She was 20 years old when she was

### A. LHC knowingly received something of value.

LHC knowingly received something of value because it received additional revenue and other benefits any time a room was rented to a sex trafficker. (ECF No. 23 at ¶¶ 87, 89, 92). Puzzlingly, LHC's argument on this element focuses **not** on whether LHC received something of value but whether the Sheraton Defendants did. (ECF No. 49 at pp. 16-17). But this is not relevant to S.C.'s claim against LHC—the subject of this motion. In any event, the knowing benefit element is satisfied as to LHC. Courts routinely recognize that this element is satisfied through allegations that the defendant received increased revenue with each room rental. *See, e.g., K.B,* 2020 U.S. Dist. LEXIS 250721, at *11 ("[T]he defendants' receipt of royalties for that rental constitutes a financial benefit from a relationship with the trafficker sufficient."); *J.C.*, 2020 U.S. Dist. LEXIS 201073, at *10 (same).

### B. LCH participated in a venture that violated the TVPRA.

LHC was part of a § 1595(a) commercial venture because it (along with the Sheraton Defendants) formed an ongoing business relationship by renting rooms at the Sheraton Uptown to traffickers, and this venture violated the TVPRA through the widespread trafficking that occurred at this hotel, including the trafficking of S.C.

A venture under § 1595(a) need not be a criminal venture, and a beneficiary's participation need not be direct participation in trafficking. *M.A.*, 425 F. Supp. 3d at 968-970. Instead, it is only necessary that there was a violation of the TVPRA within the venture's scope and that the beneficiary participated in the **venture** even though it knew or should have known about that TVPRA violation. *Id.* LHC participated in a venture covered by § 1595(a) through its role at the

---

first exploited by a trafficker who used coercion and violence to control her. (*Id.* at ¶¶34). S.C.'s second trafficker then preyed upon her vulnerable position and used coercion, fraud, and manipulation to cause her to perform commercial sex acts for his benefit, including at the Sheraton Uptown. (*Id.*) In May 2013, S.C. was repeatedly trafficked at Defendants' hotel. (*Id.* at ¶¶ 3, 35-36)

7

Sheraton Uptown. This venture formed because LHC: (1) continued renting rooms to traffickers despite having actual or constructive knowledge of the trafficking; and (2) engaged in conduct that created a favorable environment where trafficking occurred. (ECF No. 23 ¶¶ 62-63, 78). Sex traffickers, and specifically S.C.'s trafficker, repeatedly used the Sheraton Uptown because of an implicit understanding that it was a favorable venue for trafficking. (*Id.* ¶ 37, 64). There was an implicit agreement between LHC and S.C.'s trafficker. (*Id.* ¶ 66).

LHC puts forward an unduly narrow definition of venture that is out of step with how courts across the country have interpreted this term. While LHC suggests that there must be a common (unlawful) purpose for a venture to form, courts have recognized that this interpretation cannot be squared with the "should have known" language in § 1595(a). *A.C. v. Red Roof Inns*, Inc., No. 2:19-cv-4965, 2020 U.S. Dist. LEXIS 106012, at *19 (S.D. Ohio June 16, 2020). Instead, a § 1595(a) venture can be formed when a hotel-defendant continues a commercial relationship with traffickers even after the defendant **should** know the relationship is facilitating trafficking. *See, e.g.*, *M.A.*, 425 F. Supp. 3d at 971 ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where engaged in sex trafficking."); *Rickey Patel*, 2020 U.S. Dist. LEXIS 195811, at *13 (collecting cases).[4]

---

[4] Even *Doe* does **not** hold that renting hotel rooms to traffickers is insufficient to constitute participation in a venture. The *Doe* Court endorsed the reasoning of *Ricchio*, and the *Doe* concurrence clarified that the plaintiffs would have stated a claim against a defendant alleged to be directly involved in renting rooms at the subject hotels; there, the plaintiffs simply had not alleged the franchisors played that role. *Id.* at 729 (Jordan, J., concurring). After *Doe*, even district courts in the Eleventh Circuit have continued finding that a venture can be established through renting of hotel rooms when the defendant had sufficient involvement in the business relationship. *See, e.g.*, *N.G.*, 2023 U.S. Dist. LEXIS 178891, at *2; *J.G.*, 619 F. Supp. 3d at 1235. *J.C.*, 624 F. Supp. 3d at 1318[5] *See* cases cited *supra* note 2.

Moreover, contrary to LHC's characterization, S.C.'s allegations go well beyond mere **observation** of trafficking activity. S. C. relies on the specific cause of action that Congress created in § 1595(a), under which LHC had a duty to **stop profiting** by facilitating what it **should have known** was trafficking. S.C.'s allegations have at their foundation LHC's affirmative actions: receiving a benefit, renting rooms, and affirmatively creating a favorable venue for trafficking. While S.C. **does** allege LHC had the opportunity to stop her trafficking at its hotels, this is just a way to frame the allegations that LHC **knowingly or negligently furnished** a venue for her trafficking. Courts recognize this distinction:

> Rather than reading her claims as seeking to impose a duty to prevent trafficking, we read A.B.'s amended complaint as seeking the civil remedy Congress gave victims of sex trafficking against "whoever knowingly benefits" from participation in a venture the person "knew or should have known engaged" in a violation of the Act.

*A.B.*, 455 F. Supp. 3d at 182.

Courts generally agree that a venture is formed between traffickers and hotel defendants who actively participate in renting rooms to the traffickers **after** the defendants know or should know about the trafficking.[5] Under LHC's view, it can continue to financially benefit from providing a venue for sex trafficking with impunity because their operation of the Sheraton Uptown is not affirmative participation in sex trafficking. This argument reads an "overt act" requirement into § 1595(a). But the "vast majority" of courts considering the issue have declined to import this criminal "overt act" requirement into the civil remedy created by § 1595(a). *G.G.*, 76 F.4th at 559 n.15 (collecting cases). Like a common purpose requirement, an overt act requirement clashes with the core of beneficiary liability, which makes a defendant who profits, knowingly or negligently, from sex trafficking responsible to victims

---

[5] *See* cases cited *supra* note 2.

harmed by that trafficking. LHC makes no attempt to square its interpretation of the statute with the negligence-based "should have known" standard that Congress expressly chose to expand liability under § 1595(a). LHC simply ignores this key language, violating the fundamental tenet that a statute should be construed to give meaning to all terms. *See M.A.*, 425 F. Supp. 3d at 966; *A.B.*, 455 F. Supp. 3d at 180-9.

LHC's argument collapses the distinction between beneficiary liability under § 1595(a) and criminal liability under § 1591(a). *See, e.g., S.Y. v. Naples Hotel Co.,* 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020). Section 1595(a) requires **participation** in a non-criminal **venture** but **not** involvement in trafficking. *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *8 (E.D. Va. July 22, 2020). A defendant participates in a venture under 1595(a) when it continues a commercial relationship after it **should know** that the relationship is facilitating trafficking. *G.G.*, 76 F.4th at 559; *S. Y. v. Best W. Int'l*, No. 2:20-cv-616-JES-MRM, 2021 U.S. Dist. LEXIS 106139, at *10 (M.D. Fla. June 7, 2021). Providing a venue for trafficking does constitute participation under § 1595(a) even when the defendant does not actively participate in sex trafficking. *A.D.*, 2020 U.S. Dist. LEXIS 250759 at *8 ("[T]hough a hotel does not directly or knowingly participate in sex trafficking by repeatedly renting rooms to a sex trafficking venture, it nevertheless assists, furthers, and facilitates the sex trafficking activity by doing so."). Indeed, the justification for applying beneficiary liability to a hotel defendant is particularly strong because a trafficker's use of a hotel is not happenstance; hotels are the primary place where trafficking occurs. A secure venue—with easy access, minimal interference, and a low risk of traceability—is a crucial tool for a trafficker. Moreover, the illegal activity is happening on site at the hotel. This is a far cry from, for example, selling a trafficker a sandwich or gas. *A.B.* 455 F. Supp. 3d at 182.

### C. LCH had actual or constructive knowledge that its venture at the Sheraton Uptown was facilitating sex trafficking.

#### 1. *LHC misconstrues § 1595(a)'s mens rea standard.*

LHC's arguments on the *mens rea* element rest on an unduly narrow interpretation of § 1595(a). **First**, LHC reads in an atextual plaintiff-specific knowledge requirement. The object of the *mens rea* element is not a victim but a "venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. 18 U.S.C. § 1595(a). The victim-specific-knowledge requirement that LHC advocates has untenable policy implications. Under LHC's view, even companies that knowingly benefited from facilitating widespread trafficking could immunize themselves by ensuring they did not learn details about individual victims. *See G.G.*, 76 F.4th at 557. A recent decision from the Southern District of New York recognized this, distinguishing between victim and venture knowledge, and holding that § 1595(a) requires only the latter. *See Doe v. Deutsche Bank Aktiengesellschaft*, No. 22-cv-10018 (JSR), 2023 U.S. Dist. LEXIS 75503, at *30 (S.D.N.Y. 2023). The Seventh Circuit reached the same result. *G.G.*, 76 F.4th at 558; *see also Burrell v. Staff*, 60 F.4th 25, 39 (3d Cir. 2023). Because S.C. alleges a venture that involves **widespread** trafficking of victims by S.C.'s trafficker and other traffickers at the Sheraton Uptown the scope of the *mens rea* analysis is the same. The relevant question is whether LHC knew or should have known about this widespread trafficking at the hotel, rather than improperly focusing exclusively on a single victim.

**Second**, LHC's argument disregards Congress' express decision to make liability available based on a defendant's **constructive** knowledge. Constructive knowledge is what a defendant **would have known** through the exercise of ordinary diligence. By using the term "should have known," Congress invoked ordinary-negligence principles. *See M.A.*, 425 F. Supp. 3d at 966. The term should have known "implies that the actor owes another the duty of ascertaining the fact in question . . . and that he would ascertain

11

the existence thereof in the proper performance of that duty." Restatement (Second) of Torts § 12 cmt. a. While LHC references the "should have known" standard, it fails to meaningfully account for this standard. Under LHC's proposed interpretation of the TVPRA, there is no daylight between what is required to show actual knowledge and what is required to show constructive knowledge. But Congress's deliberate decision to expand liability through adoption of the "should have known" standard invalidates any interpretation of § 1595(a) that fails to meaningfully account for a defendant's duty to act with ordinary care to ascertain information.

> 2. *S.C.'s allegations support an inference that the Sheraton Defendants knew or should have known.*

Applying this standard, S.C.'s allegations support a reasonable inference that LHC knew or should have known that its Sheraton Uptown venture was facilitating sex trafficking. The first link in the chain supporting this inference is LHC's actual knowledge of sex trafficking in the hotel industry, and its awareness of how hotels can detect trafficking and stop facilitating it. (ECF No. 23 at ¶¶ 16-21). LHC also knew or should have known that sex trafficking was widespread and obvious at Sheraton-branded hotels. (*Id.* at ¶¶ 26-32). LHC attempts to undermine the relevance of these allegations by making a blanket assertion that they are all dated **after** S.C.'s trafficking. (ECF No. 40 at p. 13). However, this is simply not true. S.C. was trafficked at Defendants' hotel in May 2013. The First Amended Complaint references information and articles available to LHC well before that time, including policies adopted by the Sheraton franchisor at least as early as 2007 and a commitment to train Sheraton hotel associates as early as 2009. (ECF No. 23 at ¶¶ 22, 26-28).

LHC also knew or should have known about widespread and obvious sex trafficking at the Sheraton Uptown specifically. (*Id.* at ¶¶ 26-32). Traffickers, including S.C.'s, repeatedly chose the Sheraton Uptown because it was known as a favorable environment for trafficking activities. (*Id.* ¶¶ 36). LHC knew or should have known about the widespread sex trafficking based on its on-site role

12

operating the hotel, including through the hotel staff it employed, and based on its monitoring of online reviews and customer complaints. (*Id.* at ¶¶ 47-48). What a defendant knew (which is information within a defendant's control) can be pled generally and supported by alleging circumstantial evidence of knowledge. *See, e.g.*, *S.Y.*, 476 F. Supp. 3d at 1251. S.C. is entitled to have reasonable inferences drawn in her favor, and her allegations support a reasonable inference that LHC knew or should have known about ongoing trafficking activity at the Sheraton Uptown. *See J.M.*, 2023 U.S. Dist. LEXIS 84861, at *6-7 (plaintiff plausibly pled knowledge by identifying channels franchisor used to collect information).

S.C. also adequately pleads a basis for imputing constructive knowledge to LHC. If LHC did facilitate trafficking unknowingly at the Sheraton Uptown, then its lack of knowledge was due to its failure to exercise ordinary diligence. Because the trafficking resulted from its failure to exercise ordinary diligence, LHC is charged with constructive knowledge of that trafficking. *M..A.*, 425 F. Supp. 3d at 968; *A.W.*, 2022 U.S. Dist. LEXIS 227437 at * 21 ("[G]eneral knowledge and failure to act constitute constructive knowledge and meet the plausibility standard required to state a claim for negligence under the TVPRA's beneficiary theory"); *L.H. v. Red Roof Inn, Inc.*, Civil Action No. 3:22-CV-625-CHB, 2023 U.S. Dist. LEXIS 156293, at *34 (W.D. Ky. 2023).

LHC relies on cases in which courts have found that allegations of a general sex trafficking problem in low-budget lodging cannot establish the required *mens rea*. But this is **not** S.C.'s theory of *mens* rea. Instead, S.C. alleges that LHC knew or should have known it was facilitating trafficking at the Sheraton Uptown. Actual knowledge of industry-wide trafficking is **relevant** because it shapes what the defendant "should have known" with the exercise of reasonable diligence. *See, e.g.*, *S.G. v. Vagabond Inn Corp.,* No. SACV 21-955 PSG (KESx), 2022 U.S. Dist. LEXIS 104102, at *18 (C.D. Cal. Mar. 2, 2022) ("Defendants' general knowledge of sex trafficking in the hospitality industry and on their

13

properties can help support a showing of knowledge…"). Ultimately LHC uses the industry-wide and brand-wide allegations to support the inference of *mens rea* at the appropriate venture level: operation of the Sheraton Uptown.

Collectively, S.C.'s allegations support an inference of *mens rea* at the venture level: operation of the Sheraton Uptown. This is enough to satisfy the § 1595 (a) *mens rea* element. But, even if the Court reads § 1595(a) to require that LHC knew or should have known about the trafficking of S.C. specifically, the allegations here still overcome 12(b)(6). Over the period during which she was regularly trafficked at the Sheraton Uptown there were **many** obvious signs of S.C.'s trafficking. (ECF No. 23 ¶¶ 37-46). Her rooms were paid for with cash and she would arrive for a multi-day stay with few possessions (*Id.* ¶¶ 38-39). She was required to solicit clients in public areas of the hotel, and she did so in the presence of staff members. (*Id.* ¶ 43). She would have four or five men, not registered hotel guests, coming in and out of her room in a single night. (*Id.* ¶ 43) The "do not disturb" sign was constantly on the door during multiple-day stays, and housekeeping was not permitted to enter when making towel exchanges or to provide other services. (*Id.* ¶ 44). These and other signs that S.C. exhibited matched well-known "red flags" of trafficking in a hotel environment that follow well-established patterns and that LHC had been educated about. (*Id.* ¶¶ 40-42, 72). Determining what a reasonable hotel observer "should have known" under these circumstances requires assessing ordinary diligence, a fact issue that cannot be determined under 12(b)(6). LHC is also properly charged with constructive knowledge of S.C.'s trafficking because it would have known about S.C.'s trafficking if it had acted with reasonable diligence in operating the Sheraton Uptown. *See, e.g., M.A.*, 425 F. Supp. 3d at 972.

LHC makes the puzzling argument that it is fatal to S.C.'s claims against LHC that she has not alleged that any employee of **one of the Sheraton Defendants** observed the signs of S.C.'s trafficking. (ECF No. 49 at pp. 13). This argument fails for several reasons. First and fundamentally, S.C.'s claim

14

against LHC does not depend on the knowledge of the Sheraton Defendants. Second, there is no merit to LHC's suggestion that S.C. must plead that a specific staff member had actual knowledge of her trafficking. This argument is atextual and inconsistent with the "should have known" language that Congress used in § 1595(a). It is enough that S.C. alleges a pattern of red flags of trafficking, occurring repeatedly at the Sheraton Uptown, which were observed by multiple members of the hotel staff, all of whom were employees of LHC and who knew about these red flags. Courts have repeatedly found that plaintiff-specific "red flags" of this type, combined with a defendant's general knowledge of sex trafficking in the hotel industry, are sufficient to satisfy the *mens rea* element in § 1595(a). *A.W.*, 2022 U.S. Dist. LEXIS 227437, at *20; *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 U.S. Dist. LEXIS 217315, at *24 (S.D. Ohio Dec. 1, 2022); *C.T. v. Red Roof Inns, Inc.,* No. 2:22-cv-834-JES-KCD, 2023 U.S. Dist. LEXIS 87727, at *13 (M.D. Fla. Mar. 11, 2023) (collecting cases finding that plaintiff had plausibly pled the *mens rea* element by alleging red flags of trafficking).

LHC relies on *H.G. v Inter-Continental Hotels Corp*, 489 F Supp 3d 697, 705 (E.D. Mich. 2020) to support its *mens rea* argument. Their reliance is misplaced. **First**, LHC reads *H.G.* to require plaintiff-specific *mens rea*. This is not accurate. Instead, the *H.G.* court recognized that the object of § 1595(a)'s *mens rea* element is the **venture** that the plaintiff has alleged. *Id.* at 705 (holding that plaintiff had not "plausibly alleged that Defendants knew or should have known of sex trafficking **by the ventures** in which they allegedly participated") (emphasis added). The *H.G.* plaintiff alleged a narrow venture involving only her own trafficking, but here S.C. alleges a broader venture facilitating widespread sex trafficking at the Sheraton Uptown. **Second**, the *H.G.* Court—considering a 12(b)(6) motion filed by a hotel franchisor—held that the plaintiff's *mens rea* allegations were insufficient as applied to the franchisor because the allegations focused on the knowledge of hotel staff, and the plaintiff did not adequately connect the hotel staff's knowledge to the franchisor. By contrast, S.C. makes extensive

allegations connecting the dots between the obvious trafficking occurring at the Sheraton Uptown and LHC, which provided boots on the ground at the hotel and employed the hotel staff. Thus, the reasoning of *H.G.* does not apply here.

## II. LHC Is Also Liable as a Perpetrator.

LHC is also liable under the TVPRA as a perpetrator because, when operating the Sheraton Uptown, LHC directly violated §1591(a)(1) and §1591(a)(2). S.C. alleges that LHC had actual knowledge of trafficking at the Sheraton Uptown or was willfully blind to this trafficking, including S.C.'s trafficking, and yet continued facilitating that activity by providing a venue where it could continue uninterrupted and taking other steps that affirmatively facilitated this trafficking. (ECF No. 23 ¶¶ 120). LHC's alleged actions constitute harboring under § 1591(a)(1) and knowing facilitation of a trafficking venture under § 1591(a)(2) consistent with a criminal violation. *Cf. United States v. Bhimani*, No. 3:17-324, 2021 U.S. Dist. LEXIS 215789, at *25 (M.D. Pa. 2021) (upholding corporations conviction where hotel rented rooms to pimps); *J.M.*, 2023 U.S. Dist. LEXIS 84861 at *6-*7 (recognizing § 1591 claim against franchisor); *Ricchio*, 853 F.3d at 556 (finding plaintiff stated claim against hotel-owner operator for violations of § 1591).

Establishing a violation of § 1591(a) does not require a showing that LHC had criminal purpose, only knowledge or reckless disregard. "[A]bsent from 18 U.S.C. § 1591(a) is any requirement that an individual have the desire or 'criminal purpose' to further sex trafficking; instead, one need only have knowledge, or reckless disregard to the fact, that the victim will be caused to have underage or coerced commercial sex." *United States v. Estrada-Tepal*, 57 F. Supp. 3d 164, 169 (E.D.N.Y. 2014). LHC could violate § 1591(a) even if it acted motivated by revenue maximization with no subjective purpose to promote trafficking. Allegations of renting hotel

16

rooms knowing (or willfully blind to the fact) that they would be used for trafficking is enough to show criminal liability under 1591(a).

### III. S.C. satisfies the pleading standard in Federal Rule of Civil Procedure Rule 8(a).

The First Amended Complaint satisfies the pleading standard in Fed. R. Civ. P. 8(a)(2). LHC argues that the First Amended Complaint is an improper "shotgun" pleading. However, this argument rests on vague and inaccurate generalizations. LHC fails to identify any specific ways that the First Amended Complaint deprives it of fair notice of S.C.'s claims against it. While LHC objects to S.C.'s use of the term "Defendants" to refer to it and the Sheraton Defendants collectively, the First Amended Complaint uses the general "Defendants" label only for allegations that apply to **all defendants**. The First Amended Complaint explains the role of LHC in providing "boots on the ground" at the Sheraton Albuquerque Uptown and directs many allegations at LHC specifically. (*See, e.g.*, ECF No. 23 at ¶¶ 50-57). However, S.C.'s legal theory is that LHC and the Sheraton Defendants acted jointly to operate the Sheraton Albuquerque Uptown and participated together in a venture that violated the TVPRA. Thus, some allegations are properly directed at both LHC and the Sheraton Defendants collectively. Pleading allegations directed at multiple defendants is not fatal when the complaint "can be fairly read to aver that all defendants are responsible for the alleged conduct." *Kyle K. v. Chapman*, 208 F. 3d 940, 944 (11th Cir. 2000). S.C.'s claim is that Defendants acted in a venture, a theory **consistent with some collective pleading**. *See Ojeda v. Louis Berger Grp. (Domestic), No. 18-17233 (KM) (JBC),* 2021 U.S. Dist. LEXIS 46691, at *12 (D.N.J. 2021) ("The permissibility of collective allegation varies with the cause of

action asserted."). S.C.'s allegations provide fair notice of her claims and satisfy the applicable pleading standard.

## CONCLUSION

S.C. respectfully requests that the Court deny LHC's Motion to Dismiss in its entirety and allow the parties to proceed with discovery. In the alternative, S.C. requests leave to file an amended complaint.

Dated:  January 2, 2024                    Respectfully submitted,

**YOUTZ & VALDEZ, P.C.**

By: */s/ Shane Youtz*
Shane Youtz
Stephen Curtice
James A. Montalbano
900 Gold Ave. SW
Albuquerque, NM  87102
Telephone: (505) 244-1200
shane@youtzvaldez.com
stephen@youtzvaldez.com
james@youtzvaldez.com

**PROVOST ★ UMPHREY LAW FIRM**

By: */s/ Edward Fisher*
Edward Fisher
State Bar No.: 24012624
350 Pine Street, Suite 1100
Beaumont, Texas 77701
Telephone: (409) 838-8813
efisher@pulf.com
*Admitted Pro Hac Vice*

Patrick Barrett
Texas Bar No.: 00787042
4205 Hillsboro Pike, Suite 303
Nashville, TN 37215
615-297-1932
pbarrett@pulf.com
*Admitted Pro Hac Vice*

*Counsel for Plaintiff*

I hereby certify that a true and correct copy of the foregoing pleading was electronically filed and served through the CM/ECF system this 2nd day of January, 2024, on all registered parties.


Andrew G. Schultz
Melanie B. Stambaugh
Noell S. Huffmyer
**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**
Email: aschultz@rodey.com
mstambaugh@rodey.com
nhuffmyer@rodey.com

Michael P. O'Day
Ellen Dew
**DLA PIPER LLP (US)**
Email: michael.oday@us.dlapiper.com
Email: ellen.dew@us.dlapiper.com
*Attorneys for Defendants The Sheraton LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.*

Dan Akenhead
Charlotte A. Lamont
Laureana A. Larkin
Andrew Q. Varan
MILLER STRATVERT P.A.
dakenhead@mstlaw.com
clamont@mstlaw.com
llarkin@mstlaw.com
avaran@mstlaw.com
P.O. Box 25684
Albuquerque, NM 87125

*Attorneys for Defendant Louisiana Hotel Corporation d/b/a Sheraton Albuquerque Uptown*


   */s/ Shane Youtz*
Shane Youtz