IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JANE DOE (S.C.), an individual,

    Plaintiff,

v.                                        Case No. 23CV00451 KG/JMR

THE SHERATON, LLC, STARWOOD HOTELS
& RESORTS WORLDWIDE, LLC, STARWOOD
HOTELS & RESORTS WORLDWIDE, INC.,
MARRIOTT INTERNATIONAL, INC. AND
LOUSIANA HOTEL CORPORATION d/b/a
SHERATON ALBUQUERQUE UPTOWN,

    Defendants.

## CONSOLIDATED MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law, (Doc. 25), and Defendant Louisiana Hotel Corporation's Motion to Dismiss Plaintiff's First Amended Complaint and Incorporated Memorandum of Law, (Doc. 49). Both Motions are fully and timely briefed. *See* (Docs. 25, 32, 34, 49, 50, 54, and 55). Because the Motions are so strikingly similar, the corresponding orders are consolidated here. Having considered the briefing, the First Amended Complaint, (Doc. 23), and the controlling law, the Court denies LHC's Motion to Dismiss, and denies, in part, and grants, in part, the Sheraton Defendants' Motion to Dismiss.

I.    *Summary of the First Amended Complaint (FAC)*

Plaintiff, Jane Doe (S.C.), brought this lawsuit against Defendants under the Trafficking Victims Protection Reauthorization Act (TVPRA). (Doc. 23) at 1. In May 2013, S.C. was

repeatedly trafficked at the Sheraton Albuquerque Uptown located in Albuquerque, NM. *Id.* at 10. According to S.C., her trafficker required her to travel to Albuquerque from California to perform commercial sex acts. *Id.* S.C. alleges her trafficker specifically selected the Sheraton Albuquerque Uptown because he knew Sheraton policies and practices were favorable to trafficking, specifically, that it allowed cash payments. *Id.*

S.C. alleges hotel staff observed multiple "red flags" indicative of sex-trafficking during her stay at Sheraton Albuquerque Uptown. These red flags include: (1) paying for her room in cash, (2) arriving with few or no personal items for a multi-day stay, (3) wearing provocative clothing, (4) sitting at the hotel bar and had conversations with potential customers about services while staff were present, (5) having a nervous demeanor, and (6) having multiple men visiting her room who were not visitors to the hotel and were observed by hotel staff. *Id.* at 10–11. S.C. further alleges housekeeping staff observed the "Do Not Disturb" sign constantly on her room door and received frequent requests for additional towels and new linens, while simultaneously denying staff entry into her room, and left numerous condom wrappers in the room. *Id.* at 11. S.C. contends the staff at Sheraton Albuquerque Uptown knew or were willfully blind to the fact that S.C. was being trafficked. *Id.*

In her FAC, S.C. brings a direct liability claim against Louisiana Hotel Corporation (LHC), the owner and operator of the Sheraton Albuquerque Uptown at the time of her trafficking, a direct and indirect liability claim against The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, and Starwood Hotels & Resorts Worldwide, Inc. as franchisors of Sheraton Albuquerque Uptown and Marriott International (Marriott), and a successor liability claim against Marriott which acquired Starwood Hotels & Resorts Worldwide, LLC and Starwood Hotels & Resorts Worldwide, Inc. in 2016.

The Sheraton Defendants and Marriott (collectively Sheraton Defendants) and LHC brought its Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a). (Doc. 25) at 1; (Doc. 49) at 1.

## II.     Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means the complaint must "give the defendant fair notice of what the...claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation omitted). Hence, a complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

Under Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint...." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Rule 12(b)(6) requires a complaint set forth the grounds of a plaintiff's entitlement to relief through more than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint does not need to include detailed factual allegations, "factual allegations must be enough to raise a right to relief above the speculative level...." *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Employees Ret. Sys. of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In making this assessment, courts view "well-pleaded factual allegations in a complaint…in the light most favorable to the plaintiff." *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

*III.   Discussion*

Plaintiff brings beneficiary claims pursuant to the TVPRA against all Defendants under a theory of direct and vicarious liability. Plaintiff also brings a successor liability claim against Marriott. The Court discusses each claim below.

*A.  Direct Liability Under TVPRA*

The TVPRA is a criminal statute which gives rise to civil claims for trafficking victims. 18 U.S.C. § 1591(a). The TVPRA was amended, effective December 23, 2008, to create a standalone civil claim under Section 1595(a). The civil remedy portion provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). The phrase "a violation of this chapter" refers to 18 U.S.C. § 1591(a), which provides:

> (a) Whoever knowingly —
> (1) in or affecting interstate or foreign commerce…recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means

4

>of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a); *see also* 18 U.S.C. § 1595(a).

As an initial matter, neither the parties nor this Court finds binding precedent in the Tenth Circuit. There are few district court opinions and no Tenth Circuit opinions discussing § 1595 with respect to the hotel industry.[1] In the briefing, Plaintiff and Defendants rely on various cases which are non-binding on this Court. Thus, the Court sets forth its interpretation of § 1595(a) of the TVPRA.

After reviewing numerous cases, the Court determines to state a direct beneficiary claim under § 1595, a plaintiff must allege facts which show defendants (1) knowingly benefitted, financially or by receiving anything of value, (2) from participation in a venture that, (3) they knew or should have known has engaged in an act in violation of the TVPRA. 18 U.S.C. § 1595(a); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F.Supp.3d 959, 964 (S.D. Ohio 2019). The Court considers each of these elements with respect to LHC and the Sheraton Defendants separately.

---

[1] The Court, however, acknowledges *Bistline v. Parker*, discussing a TVPRA forced labor claim under § 1589. 918 F.3d 849 (10th Cir. 2019). Because the issues are different in the case at bar, the only relevant section of the Tenth Circuit's opinion in *Bistline* is its discussion of venture liability. *Id.* at 873–874. To the extent the Tenth Circuit discusses a venture, this Court maintains consistency.

5

*1. Whether LHC is directly liable under § 1595*

    *i. Knowingly Benefit*

LHC argues the FAC fails to allege any facts to support S.C.'s argument they knowingly benefitted from her trafficking.[2] (Doc. 49) at 16. The Court disagrees. This Court views the "knowingly benefit" element of § 1595 to "merely require[] that Defendant knowingly receive a financial benefit" from a relationship with the trafficker. *H.H. v. G6 Hosp., LLC*, 2019 WL 6682152, at *2 (S.D. Ohio) (unpublished opinion). Here, S.C. alleges LHC knowingly received revenue and other benefits from her trafficker when he paid for her room rental. (Doc. 23) at 21. Thus, the Court finds Plaintiff's allegations are sufficient to meet the "knowingly benefit" element of a civil claim under § 1595 of the TVPRA.

    *ii. Participation in a Venture*

Next, the Court considers whether LHC participated in a venture which violated the TVPRA. The Court is persuaded "participation in a venture" does not require an "overt act" of participation in the sex trafficking itself, as Defendants argues. *See Lundstrom v. Choice Hotels International, Inc.*, 2021 WL 5579117, at *6 (D. Colo.) (unpublished opinion). This is because "applying the definition of participation in a venture provided for in § 1591 to the requirements under § 1595 would void the 'knew or should have known' language of § 1595 and violate the cardinal principle of statutory construction." *Id.* (internal quotations and citations omitted). Further, in §1591(e)(6), "venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." *See Bistline*, 918 F.3d at 873. Thus, "[p]laintiff must allege at least a showing of a continuous business relationship between the trafficker and the

---

[2] The rest of LHC's argument appears to address the claims against the Sheraton Defendants rather than address S.C.'s claims against it. (Doc. 49) at 16.

6

hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F.Supp.3d at 970.

LHC also argues the "common undertaking or enterprise" must have violated the TVPRA as to Plaintiff. (Doc. 49) at 11. Plaintiff argues "it is only necessary that there was a TVPRA violation within the venture's scope" and the beneficiary participated in the venture even though it knew or should have known about the violation. (Doc. 50) at 7. The Court is persuaded that knowledge is required with respect to the venture, not with respect to any particular person. *See Doe v. Deutsche Bank Aktiengesellschaft*, 671 F.Supp.3d 387, 407 (S.D.N.Y. 2023) (stating the TVPRA imposed liability for "knowingly benefitting from participation in a sex-trafficking venture, not for knowingly benefitting from the sex-trafficking of a particular person").

To support her claim that LHC participated in a venture, S.C. alleges LHC rented rooms and formed a business relationship with her trafficker. (Doc. 23) at 10, 13–15. LHC responds by arguing the alleged venture "does not suffice to plead a TVPRA claim because no member of that alleged venture violated the TVPRA." (Doc. 55) at 9. The Court disagrees for two reasons. First, LHC appears to argue on behalf of its franchisors without addressing its role as a franchisee. Second, S.C. alleges her trafficker had a business relationship with Sheraton Albuquerque Uptown, and he continuously picked this hotel because its employees were willfully blind to his trafficking activities. (Doc. 23) at 14. To the extent LHC argues its employees did not violate the TVPRA, the Court determines their dealings with the trafficker, as alleged in the FAC, is enough to satisfy its participation in a venture in violation of the TVPRA.

      *iii.   Knew or Should Have Known the Venture Engaged in Trafficking*

Finally, the Court must consider whether LHC knew or should have known the venture was engaged in trafficking. "Knowledge requires an awareness or understanding of a fact or

circumstance." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021) (internal quotations and citations omitted). "Constructive knowledge, on the other hand, is that knowledge which one using reasonable care or diligence should have." *Id.* "General knowledge of commercial sex activity occurring at hotels across the United States is insufficient on its own to demonstrate that [a franchisor] participated in the trafficking of plaintiff." *J.L. v. Best Western International, Inc.,* 521 F.Supp.3d 1048, 1064 (D. Colo. 2021).

LHC states Plaintiff fails to "plausibly allege that Defendants 'had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff'" without providing further analysis related to knowledge of hotel staff. (Doc. 49) at 12. In Response, Plaintiff argues there were many obvious signs of her trafficking which LHC staff knew or should have known to be signs of sex trafficking. (Doc. 50) at 14.

Considering the totality of observations (bar staff overhearing conversations, front desk staff observing S.C.'s nervous demeanor and cash payments, housekeeping observing the Do Not Disturb sign and providing additional linens, and general knowledge of sex trafficking in the industry), hotel staff should have known of S.C.'s trafficking had they used reasonable care or diligence. *See A.W. v. Red Roof Inns, Inc.*, 2022 WL 17741050, at *7 (S.D. Ohio) (stating "general knowledge and failure to act constitute constructive knowledge and meet the plausibility standard required to state a claim for negligence under the TVPRA's beneficiary theory"); *see also Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (finding one sign of knowledge in isolation may be meaningless, but the complaint read as a whole is sufficient); *M.A.*, 425 F.Supp.3d 959 at 968 (finding allegations that "Defendants were on notice about the prevalence of sex trafficking generally" and "facts specific to her own trafficking, including a number of signs she alleges should have alerted staff to her situation" sufficient to survive a

motion to dismiss). Thus, reading the FAC as a whole, this Court determines S.C. has alleged sufficient facts which, taken as true, plausibly establish LHC knew or should have known she was being trafficked.

For the reasons stated above, the Court concludes S.C. has alleged sufficient facts to support a claim under the TVPRA in violation of § 1595.

*2. Whether the Sheraton Defendants are directly liable under § 1595*

### i. Knowingly Benefit

The Sheraton Defendants argue the FAC fails to allege any facts to support S.C.'s argument that they knowingly benefitted from her trafficking. (Doc. 25) at 17. The Court disagrees. As previously discussed, this Court views the "knowingly benefit" element of § 1595 to "merely require[] that Defendant knowingly receive a financial benefit" from a relationship with the trafficker. *H.H.*, 2019 WL 6682152, at *2 (S.D. Ohio) (unpublished opinion). A franchisor's receipt of royalties for a room rental constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element. *Id.* S.C. alleges the Sheraton Defendants received various financial benefits from the subject hotel, such as royalties for the room rental, where S.C. was trafficked. (Doc. 23) at 21. Thus, the Court finds Plaintiff's allegations sufficient to meet the "knowingly benefit" element of a civil claim under § 1595 of the TVPRA.[3]

### ii. Participation in a Venture

Next, the Court considers whether the Sheraton Defendants participated in a venture which violated the TVPRA. The Sheraton Defendants make the same arguments as LHC with

---

[3] It is unclear whether Plaintiff makes a direct liability claim against Marriott. The Court concludes Marriott could not have knowingly benefitted from S.C.'s trafficking because it had no connection to the Sheraton Albuquerque Uptown in 2013.

respect to the interpretation of this element. The Court, however, has previously discussed participation in a venture does not require an overt act. Thus, the Court applies the plain meaning of "participation in a venture" which requires a plaintiff to "allege that the franchisors took part in a common undertaking or enterprise involving risk and potential profit" which violates the TVPRA. *Red Roof Inns, Inc.*, 21 F.4th at 725.

Here, S.C. has not sufficiently alleged the Sheraton Defendants, who are franchisors, participated in a venture which violated the TVPRA. Plaintiff contends, in her Response, there were two theories of "venture" alleged in her FAC. (Doc. 32) at 13. The first "venture" is between the trafficker and all of the Defendants. *Id.* Although S.C. alleges the Sheraton Defendants' direct involvement with the trafficker was through facilitating room rentals and taking a "centralized approach" to trafficking, none of these allegations suggests that the franchisors participated in an alleged common undertaking or enterprise with S.C.'s traffickers or others at the hotel who violated the statute. *See Red Roof Inns, Inc.*, 21 F.4th at 727 (holding similar allegations failed to suggest franchisors participated in an alleged common undertaking).

The second "venture" was a commercial venture with LHC, and that "commercial venture" violated the TVPRA. (Doc. 32) at 14. However, this "commercial venture" is unclear to the Court and hardly, if at all, plead in Plaintiff's FAC. Even assuming it was sufficiently plead, it is not the franchisee-franchisor relationship which violated the TVPRA. Plaintiff's allegations appear to describe a general franchisor-franchisee relationship, not a venture the Sheraton Defendants knew or should have known trafficked S.C. Thus, to the extent Plaintiff is asserting a theory of direct liability against the Sheraton Defendants, the Court finds she has failed to plead sufficient facts to support the "participation in a venture" element because she fails to connect the dots between Plaintiff's alleged sex trafficking and the Sheraton Defendants.

### iii. Knew or Should Have Known the Venture Engaged in Trafficking

Finally, the Court considers whether the Sheraton Defendants knew or should have known the venture was engaged in trafficking. S.C. alleges because the Sheraton Defendants required LHC to report all instances of suspected trafficking, they would have known or should have known of "their facilitation of sex trafficking at the Sheraton Albuquerque Uptown." (Doc. 23) at 13. S.C. also contends LHC failed to report her trafficking to the Sheraton Defendants. *Id.* Such allegations, however, do not plausibly establish why the Sheraton Defendants, rather than LHC, should have been aware of plaintiff's trafficking. LHC's failure to report S.C.'s trafficking to the Sheraton Defendants is not enough to impute actual or constructive knowledge on the Sheraton Defendants.

S.C. also alleges the Sheraton Defendants were jointly responsible for customer safety, failed to adequately train employees, and were generally aware of sex trafficking occurring at hotels. (Doc. 23). Although the Court agrees with Plaintiff that actual knowledge of industry wide trafficking is relevant, it does not establish constructive knowledge. Moreover, S.C.'s allegations that the Sheraton Defendants owned, supervised, and operated hotels do not equate to knowledge or constructive knowledge of S.C.'s trafficking. *See Lundstrom*, 2021 WL 5579117, at *8 (finding similar allegations do not plausibly establish that defendant, the parent company or franchisor of the hotel, should have known about plaintiff's trafficking at its hotels).

Therefore, the Court concludes S.C. has not sufficiently pled facts to support a claim of direct liability under § 1595 against the Sheraton Defendants.

### B. Vicarious Liability

In addition to her theory of direct liability, Plaintiff contends the Sheraton Defendants are indirectly liable under the TVPRA pursuant to an agency theory. (Doc 23) at 31. The Sheraton

Defendants argue the TVPRA does not extend civil liability beyond perpetrators who knowingly benefit from participation in such ventures and even if it does, Plaintiff has not established the Sheraton Albuquerque Uptown was an agent of Sheraton. (Doc. 25) at 20. The Court disagrees.

Although the TVPRA "is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability." *J.L.*, 521 F.Supp.3d at 1064. The Tenth Circuit applies common-law agency principles from the Restatement (Third) of Agency. *United States v. Speakman*, 594 F.3d 1165, 1173 (10th Cir. 2010). "To state a claim for vicarious liability under an agency theory, a plaintiff must plausibly allege that (1) defendants and their corresponding hotels were in an agency relationship, and (2) the hotels or hotel staff are plausibly liable under § 1595." *J.L.*, 521 F.Supp.3d at 1064–65.

Thus, the Court must determine whether the Sheraton Defendants were in an agency relationship with the franchisee hotel, LHC. Plaintiff alleges the Sheraton Defendants exercised control over LHC by hosting online bookings, requiring the hotels to use corporate reward programs, setting job descriptions, controlling training and policies, instituting a reporting requirement, controlling terms and conditions of employment, and regularly inspecting hotel facilities. (Doc. 23) at 25–27. Defendants dispute whether they controlled "the particular instrumentality of the harm to Plaintiff." (Doc. 25) at 20. The Court finds Plaintiffs allegations sufficient to show an actual agency relationship between LHC and the Sheraton Defendants because Sheraton controlled aspects of the hotel operations connected to her claim. *See J.L.*, 521 F.Supp.3d at 1065 (finding similar allegations sufficient to plead an agency relationship where plaintiff alleged facts to support her theory that Defendants had authority to control aspects of the hotel operations connected to her claim, including hosting online bookings, making employment decisions, and controlling training and policies). To the extent Plaintiff alleges

vicarious liability of Marriott, the Court concludes she has not plead facts sufficient to establish an agency relationship between Marriott and LHC.

Next, the Court must determine whether LHC staff are plausibly liable under § 1595. Notably, the Sheraton Defendants do not argue LHC is not directly liable. (Doc. 25) at 20–22. The Court, however, has already decided this issue in a previous section, finding allegations sufficient to establish LHC's liability. Because the Court accepts as true all well-pleaded factual allegations in the FAC and construes them in Plaintiff's favor, the Court concludes S.C. has alleged sufficient facts to support a plausible claim the Sheraton Defendants are vicariously liable under §1595 of the TVRPA.

C. *Successor Liability – Marriott*

Marriott argues it cannot be liable as a successor because Plaintiff failed to plead any non-conclusory basis that Marriott assumed liability after it acquired Starwood. (Doc. 25) at 23. Under the doctrine of successor liability, a company may become liable for a predecessor's actions. "Successor liability is not automatic but should be determined on a case by case basis." *Trujillo v. Longhorn Mfg. Co.*, 694 F.2d 221, 225 (10th Cir. 1982). "The longstanding common law rule…has been that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor." *EEOC v. Roark-Whitten Hosp. 2, LP*, 28 F.4th 136, 146 (10th Cir. 2022) (internal quotation and citation omitted). There are four exceptions to the general rule: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporations; (3) where the purchasing corporation is merely a continuation of the selling corporations; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts. *Id.* at 147.

In her FAC, Plaintiff contends Marriott's acquisition of Starwood resulted in a merger, and Marriott therefore implicitly assumed the liabilities of Starwood. (Doc. 23) at 28. The Court agrees and determines Plaintiff has sufficiently pled there was a merger, which is an exception to the general rule and thus, imposes successor liability onto Marriott. Moreover, Marriott included in its Motion to Dismiss, a press release regarding its acquisition of Starwood which used the term "merger" and stated, "Marriott intends to take the steps necessary to cause Starwood's outstanding public debt to be *pari passu* with the outstanding public debt of Marriott International."[4] (Doc. 25-1) at 2. Thus, the Court is not persuaded by Marriott's argument that it cannot be held liable under a theory of successor liability. (Doc. 25) at 28.

D. *Shotgun Pleading*

Defendants argue the FAC should be dismissed because it is a shotgun pleading. (Doc 25) at 24. A shotgun pleading is a type of pleading which "contains several counts or causes of action, each of which incorporates by reference the entirety of its predecessors." *Jacobs v. Credit Suisse First Boston*, 2011WL 4537007, at *6 (D. Colo.). It "prevents the parties and the court from understanding what the case is really about because the complaint is so cluttered with irrelevant and unrelated facts." *Cook v. Baca*, 2011 WL 13157059, at *3 n.1 (D.N.M.).

While the FAC is hardly a concise model, for two reasons the Court does not find it is calculated to confuse Defendants or the Court. First, although it is true Plaintiff incorporates all other allegations in her cause of action section, the remaining paragraphs provide more than enough detail to understand the factual basis for her claims. (Doc. 23) at 28–31. Second, while

---

[4] *See Strobel v. Rusch*, 431 F.Supp.3d 1315, 1324 (D.N.M. 2020) ("Facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment") (quoting *Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Sec. Tr 2006-3*, 825 F.Supp.2d 1082, 1122 (D.N.M. 2011)).

Plaintiff complains of Defendants' actions as a group, there are only five Defendants, and the claims are pled sufficiently enough that defense counsel should be able to figure out the grounds for the claims against each Defendant as they have in their Motions to Dismiss. Accordingly, the Court concludes it complies with FRCP Rule 8.

IT IS SO ORDERED THAT

1. Defendant Louisiana Hotel Corporation's Motion to Dismiss, (Doc. 49), is denied;
2. Defendants' The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.'s Motion to Dismiss, (Doc. 25), is granted, in part, and denied, in part.

_____
UNITED STATES DISTRICT JUDGE