IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAWRENCE WARFIELD,

    Trustee/Plaintiff,

v.                                                                               Case No. 23-cv-451 KG/JMR

THE SHERATON, LLC, STARWOOD HOTELS
& RESORTS WORLDWIDE, LLC, STARWOOD
HOTELS & RESORTS WORLDWIDE, INC.,
MARRIOTT INTERNATIONAL, INC. AND
LOUSIANA HOTEL CORPORATION d/b/a
SHERATON ALBUQUERQUE UPTOWN,

    Defendants.

## CONSOLIDATED MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' The Sheraton, LLC, Starwood Hotels & Resorts Worldwide, LLC, Starwood Hotels & Resorts Worldwide, Inc., and Marriott International, Inc.'s, (Sheraton Defendants), Motion for Summary Judgment, (Doc. 116), and Defendant Louisiana Hotel Corporation's, (LHC), Motion for Summary Judgment, (Doc. 128). Both Motions are fully and timely briefed. *See* (Docs. 142, 143, 148, and 149). Because the Motions are so similar, the corresponding orders are consolidated here. On April 30, 2025, the Court joined/substituted Trustee Lawrence Warfield as Plaintiff in this lawsuit. (Doc. 157). Because Trustee was joined after the summary judgment briefing was complete, the Court requested additional briefing from Trustee, (Doc. 157), and Defendants responded to his brief. (Docs. 161 and 162). Having considered the briefing and the controlling law, the Court grants in part and denies in part Defendants' Motions.

I.   Background

    a.  *Procedural Summary*

Jane Doe, (S.C.), brought this lawsuit against Defendants under the Trafficking Victims Protection Reauthorization Act (TVPRA).  (Doc. 23) at 1.  On July 5, 2023, S.C. filed her First Amended Complaint (FAC).  (Doc. 23).  On February 21, 2025, the Sheraton Defendants filed their Motion for Summary Judgment and on February 24, 2025, LHC filed its Motion for Summary Judgment.  (Docs. 116, 128).  Briefing was complete on April 1, 2025.  (Docs. 155, 156).  Before briefing was complete, Trustee Lawrence Warfield filed a Motion for Joinder, (Doc. 140), on March 18, 2025, which the Court granted on April 30, 2025.  (Doc. 157).  The Court ordered additional briefing from Trustee on the summary judgment issue because he became the new party plaintiff.  *Id.*

In their Motions, Defendants argue S.C. should be judicially estopped from pursuing her claims in this lawsuit because she did not disclose the lawsuit in her Chapter 7 Bankruptcy proceeding.  *See* (Docs. 116, 128).  Trustee argues neither party should be judicially estopped, and that the bankruptcy court is the most appropriate forum to determine whether S.C. should receive excess damages.  (Doc. 158).  In their responses to Trustee's brief, Defendants argue that he should be estopped from pursuing S.C.'s claims because she would gain an unfair advantage.  (Docs. 161, 162).  In the event the Court determines Trustee should be allowed to pursue S.C.'s claims, Defendants argue S.C. should be judicially estopped from receiving any remaining damages award.  *Id.*  Now, the Court must determine: (1) whether S.C. is judicially estopped from receiving any benefit from this lawsuit; and (2) if S.C. is judicially estopped, whether Trustee is judicially estopped from pursuing S.C.'s claims on behalf of the bankruptcy estate.

     *b. Undisputed Material Facts (UMF)*

     The facts in this section are either undisputed or stated in light most favorable to the nonmovant. To the extent proffered facts have been omitted, the Court deems them immaterial to the Motions.

     S.C. filed this lawsuit on May 24, 2023, alleging Defendants violated the TVPRA. (Doc. 116) at 2, ¶ 1; (Doc. 128) at 3, ¶ 1; (Doc. 143) at 2; (Doc. 142) at 2; UMF 1. On March 8, 2024, while this lawsuit was pending, S.C. filed a Petition for Chapter 7 bankruptcy in Arizona while represented by counsel in preparing and submitting the bankruptcy petition. (Doc. 116) at 3, ¶ 4; (Doc. 142) at 2; UMF 2. At the time the petition was originally filed, S.C. was asked whether she had any "claim against third parties, whether or not you have filed a lawsuit or made a demand for payment" to which she answered "no" under penalty of perjury. (Doc. 118) at 3; UMF 3. S.C. was also asked whether, within one year before she filed for bankruptcy, she was "a party in any lawsuit, court action, or administrative proceeding" to which she answered "no." *Id.* at 5; UMF 4. A trustee was appointed in S.C.'s bankruptcy proceeding and was vested with all power and authority over the bankruptcy estate, including any claims, or rights, of recovery, both asserted or unasserted, that S.C. may have against any other party. (Doc. 116) at 3, ¶ 6; (Doc. 142) at 3; UMF 5.

     At the time, Trustee determined S.C. had no property available to pay creditors. (Doc. 119) at 2; UMF 6. On April 23, 2024, Trustee filed a Report of No Distribution on S.C.'s Chapter 7 docket, and she received her discharge on July 1, 2024. (Docs. 119, 120) at 1; UMF 7. On January 16, 2025, S.C. was deposed in this case and asked about the Chapter 7 bankruptcy proceeding:

        Q. Have you ever filed for bankruptcy?
        A. Yes.

> Q. When was that?
> A. I filed for bankruptcy in April of this year—or last year. I'm sorry.
> Q. April of 2024?
> A. Yes.
> …
> Q. Okay. And did you have a lawyer assist you with this?
> A. Yes.

(Doc. 117) at 4, 5; (Doc. 116) at 4; (Doc. 142) at 3; UMF 8.  During the deposition, S.C. was asked about her answers on the bankruptcy petition:

> Q. Do you remember answering questions as part of the petition for bankruptcy?
> A. Yes.
> …
> Q. This question says, "Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment." And you answered that question "No"; is that right?
> A. Yes. As far as I knew, I wasn't filing a lawsuit yet.
> Q. Do you know when the lawsuit was filed in this complaint, in this case?
> A. Sometime the end of last year.
> Q. It was actually filed in 2023.
> …
> Q. It also says, "Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?" And you answered that "No"; is that correct?
> A.  Okay. That is correct…

(Doc. 117) at 6–7; (Doc. 116) at 4–5; (Doc. 142) at 3; UMF 9.  S.C. testified that her bankruptcy was dismissed and approximately $22,000 was discharged.  (Doc. 116) at 5; (Doc. 142) at 3; UMF 10.  After her deposition, on January 30, 2025, S.C. filed a Debtor's Ex Parte Motion to Reopen Chapter 7 Bankruptcy Case, requesting the Court reopen her bankruptcy case because she "forgot" to add this lawsuit as an asset.  (Doc. 121); UMF 11.  S.C. filed her amended Schedule A/B on February 3, 2025, disclosing this lawsuit as an asset of her bankruptcy estate.  (Doc. 128) at 3, ¶ 7; (Doc. 143) at 3; UMF 12.  On February 3, 2025, Trustee issued notice that he holds or will hold assets of the estate and requested a deadline for creditors to file their proofs of claims.  (Doc. 128) at 3, ¶ 8; (Doc. 143) at 3; UMF 13.

Trustee was substituted as party plaintiff in this case on April 30, 2025. (Doc. 157); UMF 14. Previously named plaintiff, S.C., has not disclaimed her interest in these claims. (Doc. 158) at 10–11; (Doc. 162) at 6; UMF 15. The total amount of creditor's claims in S.C.'s bankruptcy proceeding is $16,704.63. (Doc. 163) at 4; UMF 16.

## II.     Legal Standard

Summary judgment should be granted if the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–52 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id*.

The parties must support factual allegations with evidence and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant still bears the burden to produce real evidence. The nonmoving party cannot rely upon

conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

   A.  *Judicial Estoppel Standard*

Under federal law, the doctrine of judicial estoppel is designed to protect the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *Eastman v. Union Pacific R.R. Co.*, 493 F. 3d 1151, 1156 (10th Cir. 2007). Thus, "judicial estoppel is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 535 U.S. 742, 749–50 (2001) (internal quotation marks omitted). Three factors "typically inform the decision whether to apply the doctrine [of judicial estoppel] in a particular case." *Id.* These factors are:

> First, a party's subsequent position must be clearly inconsistent with its former position. Next, a court should inquire whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the *perception* that either the first or the second court was misled[.] Finally, the court should inquire whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.

*Eastman*, 493 F.3d at 1156 (citations omitted). These three factors are not "an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751. Indeed, "[a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id.* Specifically, it "may be appropriate to resist application of judicial

6

estoppel when a party's prior position was based on inadvertence or mistake." *Id.* at 753 (internal quotation omitted).

    B.  Relevant Bankruptcy Law

Under the Bankruptcy Code, "[a] voluntary case under [Chapter 7]…is commenced by the filing with the bankruptcy court of a petition…" 11 U.S.C. § 301(a). "The commencement of a case under section 301…creates an estate…comprised of all…legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). After a Chapter 7 case is filed, a Chapter 7 trustee is appointed. 11 U.S.C. §§ 701, 702(d). A Chapter 7 trustee must "collect and reduce to money the property of the estate" and must distribute the proceeds of the debtor's property to creditors under the priority scheme in the Bankruptcy Code. 11 U.S.C. § 704. The bankruptcy trustee is the representative of the bankruptcy estate and has the "capacity to sue and be sued." 11 U.S.C. § 323(a) and (b).

Each debtor who files a bankruptcy case must *inter alia* file a list of creditors, a schedule of assets and liabilities, a schedule of income and expenses, and a statement of financial affairs. 11 U.S.C. § 521(a)(1). Unless the bankruptcy court orders otherwise, "any property scheduled under section 521(a)(1)…not otherwise administered at the time of the closing of a case is abandoned to the debtor…." 11 U.S.C. § 554(c). However, "property of the estate that is not abandoned under [§ 554] and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). "Under these provisions, a cause of action not scheduled as an asset in bankruptcy cannot be deemed abandoned under § 554(c), and the unscheduled property technically remains property of the bankruptcy estate." *Coll v. BNSF Ry. Co.*, 2013 WL 12085145, at *4 (D.N.M.) (citing *Anderson v. Acme Markets, Inc.*, 287 B.R. 624, 629 (E.D. Pa. 2002)).

### III.     Discussion

    *A. Whether S.C. is judicially estopped from receiving a benefit from this lawsuit.*

Currently, S.C. has not disclaimed her interest in the proceeds of this lawsuit. UMF 15. So, while she is no longer the named plaintiff in this case, she may receive a benefit from this lawsuit should the potential damages exceed her debts in the bankruptcy proceeding. For the reasons discussed below, the Court determines S.C. is judicially estopped from receiving any additional benefits from the proceeds of this lawsuit.

Defendants argue the three judicial estoppel factors outlined in *New Hampshire* are met. The Court agrees as it relates to S.C. First, Defendants point to the answer on S.C.'s bankruptcy filing, where she answered "No" to the question relating to any open lawsuits in which she would receive damages. UMF 3. The Tenth Circuit has "explained that failing to disclose a potential claim as an asset [in bankruptcy proceedings] is clearly inconsistent with then prosecuting an action in pursuit of that claim." *Anderson v. Seven Falls Co.*, 696 Fed. Appx. 341, 345 (10th Cir. 2017). Thus, S.C.'s denial that her personal injury claim existed at the time she filed her bankruptcy is "clearly inconsistent" with her current assertion of the claim in this lawsuit.

To satisfy the second factor, the "party must have 'success' in the prior proceeding." *Id.* at 346 (citation omitted). In *Anderson*, the plaintiffs did not disclose a pending lawsuit to the bankruptcy court, and the court granted the plaintiffs a no asset discharge, relieving them of over $300,000 of debt. *Id.* The Tenth Circuit stated the question is "whether [plaintiffs'] failure to disclose…[a] potential personal injury claim to the bankruptcy court persuaded the bankruptcy court to adopt [plaintiffs'] position that theirs was a no asset case." *Id.* The Tenth Circuit ultimately concluded that the *Anderson* plaintiffs' nondisclosure did persuade the bankruptcy

8

court to adopt their position. *Id.* Further, the Tenth Circuit held plaintiffs' "reopening of their bankruptcy case [did] not correct the fact that the bankruptcy court was misled." *Id.* Here, the facts are almost identical to those in *Anderson*. S.C. did not disclose this ongoing personal injury lawsuit to the bankruptcy court, leading the court to adopt her position and discharge her case as a no asset discharge. Thus, it follows that the nondisclosure of this lawsuit persuaded the bankruptcy court to adopt S.C.'s position.

For the third factor, the Tenth Circuit asks, "only if the party that changed positions acquired any sort of advantage by the position initially taken, and that test is clearly satisfied by [plaintiffs] receiving a discharge in bankruptcy." *Id.* at 347. Here, Plaintiff received a discharge in bankruptcy, therefore, the test is satisfied. UMF 7.

Moreover, the Court does not find S.C. acted inadvertently. "Inadvertence can be established by showing, among other things, either (1) the debtor had no knowledge of the undisclosed asset, or (2) the debtor had no motive to conceal it." *In re Ford*, 492 F.3d 1148, 1156 (10th Cir. 2007). Courts may infer that a debtor knows about a claim if she has filed it, and the claim is pending before another court while the bankruptcy proceeding is also pending. *Eastman*, 493 F.3d at 1159. "[C]ourts may readily infer that debtors have a motive to conceal assets in bankruptcy proceedings." *Anderson*, 696 Fed.Appx. at 347. Here, Plaintiff filed her personal injury lawsuit more than 10 months before she filed for bankruptcy, yet she chose not to disclose this lawsuit. And, as the Tenth Circuit has stated, we may infer Plaintiff had a motive to conceal this case in her bankruptcy proceeding because, without this case, she would receive a no asset discharge. Thus, inadvertence or mistake has not been and arguably cannot be established.

9

> B. *Whether Trustee is judicially estopped from pursuing S.C.'s claims on behalf of the bankruptcy estate.*

Because Trustee is the party plaintiff and vested with all power and authority to pursue S.C.'s claims, the Court must determine whether S.C.'s failure to disclose this lawsuit to the bankruptcy court judicially estops Trustee from pursuing S.C.'s claims in this lawsuit. *See* UMFs 5, 14. Defendants argue the Court should apply the doctrine of judicial estoppel as to both Plaintiff and Trustee. (Doc. 162) at 2; (Doc. 161) at 1. Trustee argues the doctrine of judicial estoppel does not apply to him because it was S.C. who failed to disclose the lawsuit, not Trustee. (Doc. 158) at 3. Because the Court has judicially estopped S.C. from receiving any damages exceeding her bankruptcy debt, it determines judicial estoppel does not apply to Trustee.

The Court applies the same three judicial estoppel factors to analyze whether Trustee should be judicially estopped from pursuing S.C.'s claims. Assuming, without deciding, the first two factors weigh against Trustee, the Court nonetheless determines Trustee should not be judicially estopped from maintaining the claims in this lawsuit. Specifically, the Court finds the third judicial estoppel factor counsels against applying the doctrine to Trustee. The Court's determination above judicially estopped S.C. from receiving any excess damages from this lawsuit, therefore, she will not gain an unfair advantage. Said another way, this Court's application of judicial estoppel to S.C. effectively disclaims her interest in any remaining damages that would constitute an unfair advantage. As the Tenth Circuit noted in *Eastman*, "[q]uite likely the district court's application of judicial estoppel against the trustee was inappropriate, at least to the extent [plaintiff's] personal injury claims were necessary to satisfy

his debts." 493 F.3d at 1155 n.3. "This is because at the time of the court's decision, the trustee as the real-party-in-interest had not engaged in contradictory litigation tactics." *Id.*

Defendants point to the *Coll* case, where the facts are almost identical to the facts here with the exception that in *Coll*, the plaintiff had disclaimed all interest in his personal injury claims. 2013 WL 12085145. The *Coll* court determined judicial estoppel should not apply to the trustee because the plaintiff would not gain an unfair advantage as he had disclaimed his interest in the personal injury lawsuit. *Id.* at *4. Defendants argue that since S.C. has not disclaimed her interest judicial estoppel applies to both S.C. and Trustee. (Doc. 161) at 5. Although it is true S.C. did not disclaim her interest, as explained above, the Court judicially estopped her from maintaining an interest in this case. To be sure, the Court will apply judicial estoppel to Trustee to the extent he intends to or agrees to pay any portion of the recovery to S.C. *See Zubrod v. Burris Co., Inc.*, 2015 WL 5474470, at *4 (D. Colo.) (applying judicial estoppel to trustee to the extent the trustee intended to pay any portion of the recovery to debtor).

Finally, because S.C. is judicially estopped from receiving any remaining funds from this lawsuit, and since Trustee has reopened S.C.'s bankruptcy case and is advancing the creditor's interests in the claim, the application of judicial estoppel would be inappropriate. The concerns underlying judicial estoppel will not be satisfied if the Court applies the doctrine and dismisses the case. Applying judicial estoppel against Trustee, who has standing to pursue the claim for the benefits of bankruptcy creditors, would undermine the bankruptcy court in carrying out its judicial function.

IV.     *Conclusion*

In sum, bankruptcy law grants Trustee ownership of S.C.'s personal injury claim. If the Trustee settles or obtains a verdict for damages, S.C.'s bankruptcy creditors may obtain payment

11

of their claims. If, however, the proceeds of S.C.'s claims are greater than the amount required to pay her debts, S.C. will not benefit. Thus, the Court will apply judicial estoppel to S.C. so that she will not receive any remaining damages once her creditors have been paid. S.C. is not, however, judicially estopped from participating in this lawsuit to the extent she is needed by parties to litigate the claims. The Court also applies judicial estoppel to Trustee only to the extent he intends to pay any portion of the damages award to S.C. Lastly, the Court declines to dismiss S.C.'s claims as requested in Defendants' Motions. Therefore, Defendants' Motions, (Docs. 116, 128) are granted in part and denied in part.

    IT IS SO ORDERED.

/s/_____
KENNETH J. GONZALES[1]
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.